TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00351-CV






Westcott Communications, Inc.; Law Enforcement Television Network, Inc.; Westcott

ECI, Inc.; and Ti-In Acquisition Corporation, Appellants


v.


Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney
General of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. 98-14049, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING





O P I N I O N




 In this case, we are asked to decide whether revenues from training programs
produced in Texas and subsequently delivered to subscribers throughout the nation via satellite can
be taxed under the franchise tax statute as "services performed within the state." Westcott
Communications, Inc., Law Enforcement Television Network, Inc., Westcott ECI, Inc., and Ti-In
Acquisition Corporation (collectively, "Westcott") appeal a summary judgment granted by the
district court in favor of Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott,
Attorney General (collectively, "Comptroller"). (1) Westcott contends that the services it provides are
performed outside the state, specifically, at the point of reception, and therefore the receipts from
those services should be apportioned to the states where its subscribers reside. Westcott also
contends that apportioning the receipts for services that take place in the stream of interstate
commerce to the state of performance imposes an impermissible burden on interstate commerce and
subjects it to multiple taxation in violation of the Commerce Clause of the United States Constitution
and to unequal treatment in violation of both the United States and Texas Constitutions. Because
we view the services provided by Westcott as being performed within the state and do not view the
imposition of the franchise tax as violating any constitutional provisions, we will affirm the district
court's judgment.


FACTUAL BACKGROUND


 This case involves franchise tax report years 1992 to 1994. During those report years,
Westcott produced educational, informational, and training programming and delivered the
programming to subscribers throughout the nation via satellite broadcast and videotape. These
educational and training services were provided to schools, law enforcement personnel, nurses, and
other professionals. Westcott's headquarters, broadcast transmission equipment, and production
facilities are located in Texas. Additionally, Westcott produced, filmed, edited, and broadcast its
training services in and from Texas. Westcott provided its subscribers with satellite dishes and
supporting equipment to receive the programming. Subscribers could also choose to receive the
programs via videotape rather than satellite.

 Westcott filed franchise tax returns that apportioned its subscription revenues based
on the locations where the satellite and videotapes were received. The Comptroller audited Westcott
and determined that all the satellite subscription revenues should be reapportioned to Texas because
Westcott's primary production facilities were in Texas. (2) Westcott paid under protest and sued the
Comptroller for a refund. In the district court, both parties moved for summary judgment. The
district court granted the comptroller's motion and entered judgment denying Westcott's claim. 
Westcott appeals, arguing that for franchise tax purposes, revenues from Westcott's nationwide
satellite broadcasts should be apportioned among the states where the broadcasts are received. 


DISCUSSION


 The parties do not dispute the facts material to this case. Consequently, the propriety
of summary judgment is a question of law. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699
(Tex. 1994). Where both parties file a motion for summary judgment, and one is granted and one
is denied, we determine all questions presented and render such judgment as the trial court should
have rendered. See Commissioners Court v. Agan, 940 S.W.2d 77, 80 (Tex. 1997). Therefore, we 
review the trial court's decision de novo to determine whether the Comptroller was entitled to
judgment as a matter of law. See Natividad, 875 S.W.2d at 699. 

 On appeal, Westcott claims the Comptroller's assessment (1) violated the tax code
because the Comptroller incorrectly determined the location where its services were performed; (2)
violated the Commerce Clause because Westcott is subjected to the threat of multiple taxation; and
(3) was not equal and uniform, in violation of the United States and Texas Constitutions. (3)


Service Performed in this State

 Westcott argues that the Comptroller's franchise tax assessment for the years 1992
to 1994 apportioning all satellite subscription revenues to Texas violated the tax code because its
services were performed where its subscribers were located, not where the preparations occurred. 
In other words, the services were performed where the customers received the service. Because
much of its audience is located out of state, Westcott argues that the out-of-state receipts should be
apportioned as services performed outside the state. Westcott claims that the true nature of its
services is analogous to providing live seminars and transmitting cable television services, both of
which would be taxed based on the location of the recipients. We disagree.

 Subject to certain exceptions, the franchise tax is imposed on each corporation that
does business in the state, is chartered by the secretary of state, or is authorized to do business in the
state. See Tex. Tax Code Ann. § 171.001(a)(1) (West 2002); (4) Bullock v. National Bancshares Corp.,
584 S.W.2d 268, 270 (Tex. 1979); Rylander v. Bandag Licensing Corp., 18 S.W.3d 296, 298-99
(Tex. App.--Austin 2000, pet denied). In apportioning taxable capital, the gross receipts of a
corporation from its business within the state is divided by its gross receipts from its entire business. 
See id. § 171.106(a). Determining the gross receipts from business done within the state includes
receipts from "each service performed in the state." See id. § 171.103(2).

 The supreme court has previously analyzed the franchise tax statute and stated that
it requires "that the act done or the property producing the income must be located in Texas. It [is]
the localization of the transaction in Texas and not the place of physical handing over or receiving
of money that was significant." Humble Oil & Refining Co. v. Calvert, 414 S.W.2d 172, 180 (Tex.
1967). (5) In 1980, the Comptroller determined that "where 'the act is done' determines the
geographical character of receipts derived from the performance of a service." Tex. Comp. Pub.
Acc'ts Hearing No. 10,028, 1980 WL 5466 at *5 (Nov. 27, 1980) (quoting Humble Oil, 414 S.W.2d
at 180). At no time since the Comptroller's 1980 interpretation regarding what determines the
geographical character of receipts derived from the performance of a service has the language
regarding "service performed in this state" been changed. If this longstanding interpretation were
inconsistent with the purposes of the statute, we can assume that it would have been corrected by the
legislature in the amendment process. "When the legislature reenacts without substantial change a
statute that has been previously construed by an agency charged with its execution, a court should
ordinarily adopt the agency construction." Southwestern Life Ins. Co. v. Montemayor, 24 S.W.3d
581, 585 (Tex. App.--Austin 2000, pet. denied); see also Humble Oil, 414 S.W.2d at 180 (statute
construed by proper administrative officers reenacted without substantive change will receive same
construction); Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev.
527, 543 (1947) ("The consistent construction by an administrative agency charged with effectuating
the policy of an enactment carries very considerable weight."). 

 Construction of a statute by an administrative agency charged with its enforcement
is entitled to serious consideration, so long as the construction is reasonable and does not contradict
the plain language of the statute. Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex.
1993). Construing "where services are performed" to be where the "act is done" is a perfectly
reasonable construction of the franchise tax statute which says receipts from the sale of services must
be apportioned to the location of the services. If the agency's interpretation is consistent with the
language and the purposes of the statute, the court will accept it, even if other reasonable
interpretations exist. See Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc., 997 S.W.2d 298,
305 (Tex. App.--Austin 1999, pet. denied).

 It is clear that where the "act is done" in this case is in Texas, rather than in the states
of the subscribing clients. Westcott claims its services are analogous to subscription television
services like cable television. It argues that its customers are paying Westcott to broadcast television
programming to their business establishments, not to produce television programming. Westcott
misstates its service. Westcott is not paid to broadcast or produce television programming. It is paid
to provide training to its customers. This training can include live broadcast sessions, interactive
question-and-answer sessions, testing, and other educational and training services, all done by
employees from its Texas facilities. Westcott is unlike a cable television provider because its
services go well beyond providing a broadcast signal to its customers. In light of these facts, we hold
that it was reasonable for the Comptroller to conclude that Westcott's training services were
performed in Texas and are therefore covered under the franchise tax statute as gross receipts from
business done in the state.


Commerce Clause

 Westcott also argues that the Comptroller's assessment violated the Commerce
Clause of the United States Constitution because it subjects Westcott to the threat of multiple
taxation. The Commerce Clause (6) limits the state from interfering with interstate commerce. U.S.
Const. art. I, § 8, cl. 3; see Freeman v. Hewitt, 329 U.S. 249, 252 (1946); Bandag Licensing Corp.,
18 S.W.3d at 298-99. The receipts in question are obtained through interstate commerce. The
franchise tax, while justified by the economic benefits conferred by the state, extends only "to the
limits of the United States Constitution and the federal law adopted" thereunder. Tex. Tax. Code
Ann. § 171.001(c) (West 2002); National Bancshares Corp., 584 S.W.2d at 270.

 The Supreme Court, in Complete Auto Transit, Inc. v. Brady, set forth the proper test
for analyzing whether a state tax affecting interstate commerce is consistent with the Constitution. 
430 U.S. 274 (1977). The tax will be sustained if it: (1) is applied to an activity with a substantial
nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate
commerce; and (4) is fairly related to the services provided by the state. Id. at 279; see also Vinmar
v. Harris County Appraisal Dist., 947 S.W.2d 554, 555 (Tex. 1997); Rylander v. 3 Beall Brothers
3, Inc., 2 S.W.3d 562, 570 (Tex. App.--Austin 1999, pet. denied). 

 Westcott's issue lies in the fair apportionment prong of the Complete Auto test, the
main purpose of which "is to ensure that each state taxes only its fair share of an interstate
transaction." Goldberg v. Sweet, 488 U.S. 252, 260-61 (1989). When there is a threat of multiple
taxation, the court will look to whether the state's tax attempts to reach beyond what is attributable
to the activity taking place in the taxing state. See Oklahoma Tax Comm'n v. Jefferson Lines, 514
U.S. 175, 185 (1995). Westcott argues that it faces the threat of multiple taxation because the
receipts in question may be taxed both by the state of transmission and the state of reception,
depending upon how each state decides to view where performance has taken place. It asserts that
it has in fact reported the revenues from the subscription agreements as gross receipts in the
respective states where the subscribers are located. It argues that it cannot be similarly taxed on the
same receipts by this state. However, the threat of multiple taxation is not sufficient to make a tax
per se unconstitutional. Id. at 192; Goldberg, 488 U.S. at 262-63; Western Live Stock v. Bureau of
Revenue, 303 U.S. 250, 259 (1938).

 To determine whether a tax is fairly apportioned, it must be both internally and
externally consistent. (7) Oklahoma Tax Comm'n, 514 U.S. at 185; Goldberg, 488 U.S. at 261;
Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 169-70 (1983). In determining
consistency in this context, the court looks to see whether a state is attempting to take more than its
fair share of taxes from the interstate transaction. Oklahoma Tax Comm'n, 514 U.S. at 185. 
Westcott contends that the assessment of the franchise tax fails the external consistency test because
the Comptroller failed to properly apportion its subscription gross receipts, which are derived from
interstate commerce.

 The Comptroller argues that Westcott has failed to prove that it would be required
by law to pay a franchise tax in any other state. This argument, while once the requirement under
the Commerce Clause, (8) has been rejected by the Supreme Court. (9) A tax that on its face discriminates
against interstate commerce is invalid. See Armco, Inc. v. Hardesty, 467 U.S. 638, 644 (1984). On
the other hand, a tax which appears non-discriminatory on its face, such as the one in this case, (10)
must still meet the external consistency test, which asks whether the state has taxed only that portion
of the revenues from the interstate activity which reasonably reflects the in-state component of the
activity. Goldberg, 488 U.S. at 265; see also Oklahoma Tax Comm'n, 514 U.S. at 186-96 (applying
external consistency test to tax which did not facially discriminate against interstate commerce);
American Trucking Ass'ns v. Scheiner, 483 U.S. 266, 282 (1987) ("The way in which a tax levied
on participants in interstate commerce is measured and assessed bears directly on whether it
implicates central Commerce Clause values."); Complete Auto, 430 U.S. at 281 (noting that Court
"has moved toward a standard of permissibility of state taxation based upon its actual effect rather
than its legal terminology"). 

 As the Court recognized in Oklahoma Tax Commission, "entire gross receipts derived
from sales of services to be performed wholly in one state are taxable by that [s]tate, notwithstanding
that the contract for performance of the services has been entered into across state lines with
customers who reside outside the taxing [s]tate." 514 U.S. at 188. This statement mirrors the
present situation. All aspects of the training services Westcott provides take place in Texas. The
contracts for performance of those services are entered into across state lines with customers residing
outside Texas. We see no reason why the services provided in this instance should escape a facially
nondiscriminatory tax. 

 The fact that a business has decided to conduct itself in interstate commerce does not
alleviate it from its responsibilities within the state. See Goldberg, 488 U.S. at 266. A business
engaged in interstate commerce "must pay its way." Postal Tel. Cable Co. v. Richmond, 249 U.S.
252, 259 (1919). It is not for this Court to decide whether other states may tax the receipts in
question. We must simply determine whether the imposition of the tax in issue is a fair
apportionment and does not impermissibly burden interstate commerce. There is always a risk of
duplicative taxation regarding interstate commerce. See Oklahoma Tax Comm'n, 514 U.S. at 192;
American Trucking, 483 U.S. at 283; Moorman Mfg. Co. v. Bair, 437 U.S. 267, 278 (1978). 
However, "[c]ourts are not possessed of instruments of determination so delicate as to enable them
to weigh the various factors in a complicated economic setting which, as to an isolated application
of a [s]tate tax, might mitigate the obvious burden generally created by a direct tax on commerce." 
Freeman, 329 U.S. at 256.

 Multiple taxation on interstate commerce is not an evil that flows from either state's 
individual tax, but is simply an incident of interstate commerce being subject to two different taxing
jurisdictions. See Oklahoma Tax Comm'n, 514 U.S. at 192. Again, the concern when there is a
threat of multiple taxation is a state's attempt to reach beyond that portion of the value that is
attributable to the activity in the taxing state. Id. at 185. All aspects of the training service Westcott
provides take place in the state of Texas. The imposition of the franchise tax in this instance is
externally consistent as there is no attempt to impermissibly tax beyond what takes place in this state. 
Therefore, we hold that the taxation of Westcott's gross receipts at issue meets the fair
apportionment prong of the Complete Auto test. 


Due Process and Equal Protection

 Westcott finally argues that assessing the franchise tax on its gross receipts in this
instance violates the Due Process and Equal Protection Clauses of the United States Constitution and
the Equal and Uniform Clause of the Texas Constitution. U.S. Const. amend. XIV; Tex. Const. art.
1, §§ 3, 19; Tex. Const. art. VIII, § 1(a). It argues that businesses which provide training through
satellite transmissions are treated substantially differently than those which provide the same training
through the use of physical media, such as videotapes. Westcott argues this is unconstitutional
because it bears no rational relationship to any legitimate state interest and is an arbitrary and
unreasonable distinction between taxpayers.

 States generally have broad powers to impose and collect taxes, but they must not
make classifications among taxpayers that are arbitrary, unreasonable, or capricious. See Hurt v.
Cooper, 110 S.W.2d 896, 901 (Tex. 1937); Upjohn v. Rylander, 38 S.W.3d 600, 609 (Tex.
App.--Austin 2000, pet. denied). That all taxes be equal and uniform requires only that all persons
falling within the same class be taxed alike. Upjohn, 38 S.W.3d at 609. We will uphold a tax
classification unless it has no rational basis. Id. In reviewing taxation laws, there is a strong
presumption of constitutional validity. Id.

 Westcott mischaracterizes the distinction made between taxpayers in this case. It
claims its business is analogous to that of a company providing cable or broadcast television
services. Because the receipts generated from services provided by businesses engaged in those
services are allocated to the state of the subscriber, it argues that it is an unreasonable and arbitrary
distinction to single out businesses providing satellite broadcasts to its customers and allocate their
receipts differently. However, Westcott provides a different service than cable companies. A cable
company is paid by its subscribers to broadcast television programming. Westcott, on the other
hand, develops and operates an extensive training program and offers those services via satellite to
its customers. Because Westcott provides a different service than a cable company, there is a
rational basis for distinguishing between Westcott and cable companies.

 Westcott has similarly failed to show the lack of a rational basis for distinguishing
between those who provide services in the state and transmit those services through satellite
transmissions and those who ship physical products out of the state. We cannot say it was
unreasonable for the Comptroller to make this distinction. In fact, this seems to be a straightforward
interpretation of section 171.103. Compare Tex. Tax Code Ann. § 171.103(1) ("each sale of
tangible personal property shipped from this state to a purchaser in another state" in which the seller
is subject to taxation does not constitute gross receipts of a corporation from its business done in the
state), with id. § 171.103(2) ("each service performed in this state" does constitute gross receipts of
a corporation from its business done in the state). To succeed in its claim, Westcott is required to
show that, as applied to a large number of taxpayers, the classification actually resulted in
discrimination between similarly situated taxpayers. See Sharp v. Caterpillar, Inc., 932 S.W.2d 230, 
241 (Tex. App.--Austin 1996, writ denied). Westcott has failed to meet this burden.


CONCLUSION


 We hold that Westcott's services were performed in Texas and are therefore subject
to the state's franchise tax. The fact that the tax is imposed on receipts gained through the course
of interstate commerce does not invalidate the imposition of a facially non-discriminatory tax. 
Furthermore, Westcott has failed to show the tax bears no rational relationship to any legitimate state
interest and makes an arbitrary and unreasonable distinction between taxpayers. For the foregoing
reasons, we affirm the judgment of the district court.



 

 David Puryear, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed: March 20, 2003
1. We have substituted the current attorney general as the appropriate party. See Tex. R. App.
P. 7.2(a). The Comptroller and the attorney general are statutory defendants in tax protest suits. See
Tex. Tax Code Ann. § 112.151(b) (West 2002). Because their interests do not diverge in this case,
for convenience we will refer to them collectively as "Comptroller."
2. The Comptroller conceded that videotape subscription revenues could be apportioned based
on the location of the subscriber because receipts from tangible personal property like videotapes
must be apportioned to the location of delivery to the buyer. See Tex. Tax Code Ann. §§ 171.103(1),
171.1032(a)(1) (West 2002).
3. Westcott argues that the assessment is in violation of the Due Process and Equal Protection
Clauses of the United States Constitution and the Equal and Uniform Clause of the Texas
Constitution.
4. All references will be to the current version of the Texas Tax Code, as there have been no
material revisions since the audit period (franchise tax report years 1992 to 1994).
5. In Humble Oil, the court was construing a predecessor to the current franchise tax statute. 
The language of the previous statute, allocating receipts from "services performed within Texas,"
is virtually the same as the current section 171.103(2) of the Texas Tax Code. Humble Oil &
Refining Co. v. Calvert, 414 S.W.2d 172, 180 (Tex. 1967).
6. U.S. Const. art. I, § 8, cl. 3 (Congress shall have power "[t]o regulate Commerce . . . among
the several States.").
7. Internal consistency focuses on the threat of multiple taxation from identical statutes in a
multitude of states, while external consistency focuses on the economic justification of the tax and
whether it reaches beyond that portion of value that is fairly attributable to the activity within the
taxing state. See Oklahoma Tax Comm'n v. Jefferson Lines, 514 U.S. 175, 185 (1995).
8. General Motors Corp. v. Washington, 377 U.S. 436, 449 (1964) ("the taxpayers must
show that the formula places a burden upon interstate commerce in a constitutional sense").
9. See Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue, 483 U.S. 232, 248
(1987) (overruling portion of General Motors Corp. requiring taxpayer to prove that specific
interstate transactions were subjected to multiple taxation); Armco, Inc. v. Hardesty, 467 U.S. 638,
644 (1984) (noting that taxpayer does not have to prove "actual discriminatory impact" to show that
certain tax is form of discrimination against interstate commerce).
10. The statute in this case imposes a franchise tax on any corporation doing business in the
state. It does not, on its face, discriminate against those businesses engaging in interstate commerce. 
See Tex. Tax Code Ann. § 171.001(a)(1) (West 2002).