# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00351-CV

**Westcott Communications, Inc.; Law Enforcement Television Network, Inc.; Westcott ECI, Inc.; and Ti-In Acquisition Corporation, Appellants**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. 98-14049, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING

## O P I N I O N

In this case, we are asked to decide whether revenues from training programs produced in Texas and subsequently delivered to subscribers throughout the nation via satellite can be taxed under the franchise tax statute as Aservices performed within the state.@ Westcott Communications, Inc., Law Enforcement Television Network, Inc., Westcott ECI, Inc., and Ti-In Acquisition Corporation (collectively, AWestcott@) appeal a summary judgment granted by the district court in favor of Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General (collectively, AComptroller@).[1]

---

[1] We have substituted the current attorney general as the appropriate party. *See* Tex. R. App. P. 7.2(a). The Comptroller and the attorney general are statutory defendants in tax protest suits. *See* Tex. Tax Code Ann. ' 112.151(b) (West 2002). Because their interests do not diverge in this case, for convenience we will refer to them collectively as AComptroller.@

Westcott contends that the services it provides are performed outside the state, specifically, at the point of reception, and therefore the receipts from those services should be apportioned to the states where its subscribers reside. Westcott also contends that apportioning the receipts for services that take place in the stream of interstate commerce to the state of performance imposes an impermissible burden on interstate commerce and subjects it to multiple taxation in violation of the Commerce Clause of the United States Constitution and to unequal treatment in violation of both the United States and Texas Constitutions. Because we view the services provided by Westcott as being performed within the state and do not view the imposition of the franchise tax as violating any constitutional provisions, we will affirm the district court=s judgment.

**FACTUAL BACKGROUND**

This case involves franchise tax report years 1992 to 1994. During those report years, Westcott produced educational, informational, and training programming and delivered the programming to subscribers throughout the nation via satellite broadcast and videotape. These educational and training services were provided to schools, law enforcement personnel, nurses, and other professionals. Westcott=s headquarters, broadcast transmission equipment, and production facilities are located in Texas. Additionally, Westcott produced, filmed, edited, and broadcast its training services in and from Texas. Westcott provided its subscribers with satellite dishes and supporting equipment to receive the programming. Subscribers could also choose to receive the programs via videotape rather than satellite.

Westcott filed franchise tax returns that apportioned its subscription revenues based on the locations where the satellite and videotapes were received. The Comptroller audited Westcott and

determined that all the satellite subscription revenues should be reapportioned to Texas because Westcott=s primary production facilities were in Texas.[2] Westcott paid under protest and sued the Comptroller for a refund. In the district court, both parties moved for summary judgment. The district court granted the comptroller=s motion and entered judgment denying Westcott=s claim. Westcott appeals, arguing that for franchise tax purposes, revenues from Westcott=s nationwide satellite broadcasts should be apportioned among the states where the broadcasts are received.

## DISCUSSION

The parties do not dispute the facts material to this case. Consequently, the propriety of summary judgment is a question of law. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Where both parties file a motion for summary judgment, and one is granted and one is denied, we determine all questions presented and render such judgment as the trial court should have rendered. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997). Therefore, we review the trial court=s decision *de novo* to determine whether the Comptroller was entitled to judgment as a matter of law. *See Natividad*, 875 S.W.2d at 699.

---

[2] The Comptroller conceded that videotape subscription revenues could be apportioned based on the location of the subscriber because receipts from tangible personal property like videotapes must be apportioned to the location of delivery to the buyer. *See* Tex. Tax Code Ann. '' 171.103(1), 171.1032(a)(1) (West 2002).

On appeal, Westcott claims the Comptroller=s assessment (1) violated the tax code because the Comptroller incorrectly determined the location where its services were performed; (2) violated the Commerce Clause because Westcott is subjected to the threat of multiple taxation; and (3) was not equal and uniform, in violation of the United States and Texas Constitutions.[3]

*Service Performed in this State*

Westcott argues that the Comptroller=s franchise tax assessment for the years 1992 to 1994 apportioning all satellite subscription revenues to Texas violated the tax code because its services were performed where its subscribers were located, not where the preparations occurred. In other words, the services were performed where the customers *received* the service. Because much of its audience is located out of state, Westcott argues that the out-of-state receipts should be apportioned as services performed outside the state. Westcott claims that the true nature of its services is analogous to providing live seminars and transmitting cable television services, both of which would be taxed based on the location of the recipients. We disagree.

---

[3] Westcott argues that the assessment is in violation of the Due Process and Equal Protection Clauses of the United States Constitution and the Equal and Uniform Clause of the Texas Constitution.

Subject to certain exceptions, the franchise tax is imposed on each corporation that does business in the state, is chartered by the secretary of state, or is authorized to do business in the state. *See* Tex. Tax Code Ann. ' 171.001(a)(1) (West 2002);[4] *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 270 (Tex. 1979); *Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 298-99 (Tex. App.CAustin 2000, pet denied). In apportioning taxable capital, the gross receipts of a corporation from its business within the state is divided by its gross receipts from its entire business. *See id.* ' 171.106(a). Determining the gross receipts from business done within the state includes receipts from Aeach service performed in the state.@ *See id.* ' 171.103(2).

---

[4] All references will be to the current version of the Texas Tax Code, as there have been no material revisions since the audit period (franchise tax report years 1992 to 1994).

The supreme court has previously analyzed the franchise tax statute and stated that it requires Athat the act done or the property producing the income must be located in Texas. It [is] the localization of the transaction in Texas and not the place of physical handing over or receiving of money that was significant.@ *Humble Oil & Refining Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex. 1967).[5] In 1980, the Comptroller determined that Awhere >the act is done= determines the geographical character of receipts derived from the performance of a service.@ Tex. Comp. Pub. Acc=ts Hearing No. 10,028, 1980 WL 5466 at *5 (Nov. 27, 1980) (quoting *Humble Oil*, 414 S.W.2d at 180). At no time since the Comptroller=s 1980 interpretation regarding what determines the geographical character of receipts derived from the performance of a service has the language regarding Aservice performed in this state@ been changed. If this longstanding interpretation were inconsistent with the purposes of the statute, we can assume that it would have been corrected by the legislature in the amendment process. AWhen the legislature reenacts without substantial change a statute that has been previously construed by an agency charged with its execution, a court should ordinarily adopt the agency construction.@ *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 585 (Tex. App.CAustin 2000, pet. denied); *see also Humble Oil*, 414 S.W.2d at 180 (statute construed by proper administrative officers reenacted without substantive change will receive same construction); Felix Frankfurter, *Some Reflections on the Reading of Statutes*,

_____

[5] In *Humble Oil,* the court was construing a predecessor to the current franchise tax statute. The language of the previous statute, allocating receipts from Aservices performed within Texas,@ is virtually the same as the current section 171.103(2) of the Texas Tax Code. *Humble Oil & Refining Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex. 1967).

47 Colum. L. Rev. 527, 543 (1947) (AThe consistent construction by an administrative agency charged with effectuating the policy of an enactment carries very considerable weight.@).

Construction of a statute by an administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). Construing Awhere services are performed@ to be where the Aact is done@ is a perfectly reasonable construction of the franchise tax statute which says receipts from the sale of services must be apportioned to the location of the services. If the agency=s interpretation is consistent with the language and the purposes of the statute, the court will accept it, even if other reasonable interpretations exist. *See Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 305 (Tex. App.CAustin 1999, pet. denied).

It is clear that where the Aact is done@ in this case is in Texas, rather than in the states of the subscribing clients. Westcott claims its services are analogous to subscription television services like cable television. It argues that its customers are paying Westcott to *broadcast* television programming to their business establishments, not to *produce* television programming. Westcott misstates its service. Westcott is not paid to broadcast *or* produce television programming. It is paid to provide training to its customers. This training can include live broadcast sessions, interactive question-and-answer sessions, testing, and other educational and training services, all done by employees from its Texas facilities. Westcott is unlike a cable television provider because its services go well beyond providing a broadcast signal to its customers. In light of these facts, we hold that it was reasonable for the Comptroller to conclude that Westcott=s training

**7**

services were performed in Texas and are therefore covered under the franchise tax statute as gross receipts from business done in the state.

### *Commerce Clause*

Westcott also argues that the Comptroller=s assessment violated the Commerce Clause of the United States Constitution because it subjects Westcott to the threat of multiple taxation. The Commerce Clause[6] limits the state from interfering with interstate commerce. U.S. Const. art. I, ' 8, cl. 3; *see Freeman v. Hewitt*, 329 U.S. 249, 252 (1946); *Bandag Licensing Corp.*, 18 S.W.3d at 298-99. The receipts in question are obtained through interstate commerce. The franchise tax, while justified by the economic benefits conferred by the state, extends only Ato the limits of the United States Constitution and the federal law adopted@ thereunder. Tex. Tax. Code Ann. ' 171.001(c) (West 2002); *National Bancshares Corp.*, 584 S.W.2d at 270.

The Supreme Court, in *Complete Auto Transit, Inc. v. Brady*, set forth the proper test for analyzing whether a state tax affecting interstate commerce is consistent with the Constitution. 430 U.S. 274 (1977). The tax will be sustained if it: (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state. *Id.* at 279; s*ee also Vinmar v. Harris County Appraisal*

---

[6] U.S. Const. art. I, ' 8, cl. 3 (Congress shall have power A[t]o regulate Commerce . . . among the several States.@).

*Dist.*, 947 S.W.2d 554, 555 (Tex. 1997); *Rylander v. 3 Beall Brothers 3, Inc.*, 2 S.W.3d 562, 570 (Tex. App.CAustin 1999, pet. denied).

Westcott=s issue lies in the fair apportionment prong of the *Complete Auto* test, the main purpose of which Ais to ensure that each state taxes only its fair share of an interstate transaction.@ *Goldberg v. Sweet*, 488 U.S. 252, 260-61 (1989). When there is a threat of multiple taxation, the court will look to whether the state=s tax attempts to reach beyond what is attributable to the activity taking place in the taxing state. *See Oklahoma Tax Comm=n v. Jefferson Lines*, 514 U.S. 175, 185 (1995). Westcott argues that it faces the threat of multiple taxation because the receipts in question may be taxed both by the state of transmission and the state of reception, depending upon how each state decides to view where performance has taken place. It asserts that it has in fact reported the revenues from the subscription agreements as gross receipts in the respective states where the subscribers are located. It argues that it cannot be similarly taxed on the same receipts by this state. However, the threat of multiple taxation is not sufficient to make a tax *per se* unconstitutional. *Id.* at 192; *Goldberg*, 488 U.S. at 262-63; *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 259 (1938).

To determine whether a tax is fairly apportioned, it must be both internally and externally consistent.[7] *Oklahoma Tax Comm=n*, 514 U.S. at 185; *Goldberg*, 488 U.S. at 261; *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 169-70 (1983). In determining consistency in this context, the

---

[7] Internal consistency focuses on the threat of multiple taxation from identical statutes in a multitude of states, while external consistency focuses on the economic justification of the tax and whether it reaches beyond that portion of value that is fairly attributable to the activity within the taxing state. *See Oklahoma Tax Comm=n v. Jefferson Lines*, 514 U.S. 175, 185 (1995).

court looks to see whether a state is attempting to take more than its fair share of taxes from the interstate transaction.  *Oklahoma Tax Comm=n*, 514 U.S. at 185.  Westcott contends that the assessment of the franchise tax fails the external consistency test because the Comptroller failed to properly apportion its subscription gross receipts, which are derived from interstate commerce.

The Comptroller argues that Westcott has failed to prove that it would be required by law to pay a franchise tax in any other state.  This argument, while once the requirement under the Commerce Clause,[8] has been rejected by the Supreme Court.[9]  A tax that on its face discriminates against interstate commerce is invalid.  *See Armco, Inc. v. Hardesty*, 467 U.S. 638, 644 (1984).  On the other hand, a tax which appears non-discriminatory on its face, such as the one in this case,[10] must still meet the external consistency test, which asks whether the state has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity.  *Goldberg*, 488 U.S. at 265; s*ee also Oklahoma Tax Comm=n*, 514 U.S. at 186-96 (applying external consistency test to tax which did not facially discriminate against interstate commerce); *American Trucking Ass=ns v. Scheiner*, 483 U.S. 266,

---

[8]     *General Motors Corp. v. Washington*, 377 U.S. 436, 449 (1964) (Athe taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense@).

[9]     *See Tyler Pipe Indus., Inc. v. Washington State Dep=t of Revenue*, 483 U.S. 232, 248 (1987) (overruling portion of *General Motors Corp.* requiring taxpayer to prove that specific interstate transactions were subjected to multiple taxation); *Armco, Inc. v. Hardesty*, 467 U.S. 638, 644 (1984) (noting that taxpayer does not have to prove Aactual discriminatory impact@ to show that certain tax is form of discrimination against interstate commerce).

[10]  The statute in this case imposes a franchise tax on any corporation doing business in the state.  It does not, on its face, discriminate against those businesses engaging in interstate commerce.  *See* Tex. Tax Code Ann. ' 171.001(a)(1) (West 2002).

282 (1987) (**AThe way in which a tax levied on participants in interstate commerce is measured and assessed bears directly on whether it implicates central Commerce Clause values**.@); *Complete Auto*, 430 U.S. at 281 (noting that Court Ahas moved toward a standard of permissibility of state taxation based upon its actual effect rather than its legal terminology@).

As the Court recognized in *Oklahoma Tax Commission*, Aentire gross receipts derived from sales of services to be performed wholly in one state are taxable by that [s]tate, notwithstanding that the contract for performance of the services has been entered into across state lines with customers who reside outside the taxing [s]tate.@ 514 U.S. at 188. This statement mirrors the present situation. All aspects of the training services Westcott provides take place in Texas. The contracts for performance of those services are entered into across state lines with customers residing outside Texas. We see no reason why the services provided in this instance should escape a facially nondiscriminatory tax.

The fact that a business has decided to conduct itself in interstate commerce does not alleviate it from its responsibilities within the state. *See Goldberg*, 488 U.S. at 266. A business engaged in interstate commerce Amust pay its way.@ *Postal Tel. Cable Co. v. Richmond*, 249 U.S. 252, 259 (1919). It is not for this Court to decide whether other states may tax the receipts in question. We must simply determine whether the imposition of the tax in issue is a fair apportionment and does not impermissibly burden interstate commerce. There is always a risk of duplicative taxation regarding interstate commerce. *See Oklahoma Tax Comm=n*, 514 U.S. at 192; *American Trucking*, 483 U.S. at 283; *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 278 (1978). However, A[c]ourts are not possessed of instruments of determination so delicate as to enable them to weigh the various factors in a complicated economic setting

**11**

which, as to an isolated application of a [s]tate tax, might mitigate the obvious burden generally created by a direct tax on commerce.@ *Freeman*, 329 U.S. at 256.

Multiple taxation on interstate commerce is not an evil that flows from either state=s individual tax, but is simply an incident of interstate commerce being subject to two different taxing jurisdictions. *See Oklahoma Tax Comm=n*, 514 U.S. at 192. Again, the concern when there is a threat of multiple taxation is a state=s attempt to reach beyond that portion of the value that is attributable to the activity in the taxing state. *Id.* at 185. All aspects of the training service Westcott provides take place in the state of Texas. The imposition of the franchise tax in this instance is externally consistent as there is no attempt to impermissibly tax beyond what takes place in this state. Therefore, we hold that the taxation of Westcott=s gross receipts at issue meets the fair apportionment prong of the *Complete Auto* test.

### *Due Process and Equal Protection*

Westcott finally argues that assessing the franchise tax on its gross receipts in this instance violates the Due Process and Equal Protection Clauses of the United States Constitution and the Equal and Uniform Clause of the Texas Constitution. U.S. Const. amend. XIV; Tex. Const. art. 1, '' 3, 19; Tex. Const. art. VIII, ' 1(a). It argues that businesses which provide training through satellite transmissions are treated substantially differently than those which provide the same training through the use of physical media, such as videotapes. Westcott argues this is unconstitutional because it bears no rational relationship to any legitimate state interest and is an arbitrary and unreasonable distinction between taxpayers.

States generally have broad powers to impose and collect taxes, but they must not make classifications among taxpayers that are arbitrary, unreasonable, or capricious. *See Hurt v. Cooper*, 110

**12**

S.W.2d 896, 901 (Tex. 1937); *Upjohn v. Rylander*, 38 S.W.3d 600, 609 (Tex. App.CAustin 2000, pet.

denied).  That all taxes be equal and uniform requires only that all persons falling within the same class be

taxed alike.  *Upjohn*, 38 S.W.3d at 609.  We will uphold a tax classification unless it has no rational basis.

*Id.*  In reviewing taxation laws, there is a strong presumption of constitutional validity.  *Id.*

Westcott mischaracterizes the distinction made between taxpayers in this case.  It claims its

business is analogous to that of a company providing cable or broadcast television services.  Because the

receipts generated from services provided by businesses engaged in those services are allocated to the state

of the *subscriber*, it argues that it is an unreasonable and arbitrary distinction to single out businesses

providing satellite broadcasts to its customers and allocate their receipts differently.  However, Westcott

provides a different service than cable companies.  A cable company is paid by its subscribers to broadcast

television programming.  Westcott, on the other hand, develops and operates an extensive training program

and offers those services via satellite to its customers.  Because Westcott provides a different service than a

cable company, there is a rational basis for distinguishing between Westcott and cable companies.

Westcott has similarly failed to show the lack of a rational basis for distinguishing between

those who provide services in the state and transmit those services through satellite transmissions and those

who ship physical products out of the state.  We cannot say it was unreasonable for the Comptroller to

make this distinction.  In fact, this seems to be a straightforward interpretation of section 171.103.

*Compare* Tex. Tax Code Ann. ' 171.103(1) (Aeach sale of tangible personal property shipped from this

state to a purchaser in another state@ in which the seller is subject to taxation does not constitute gross

receipts of a corporation from its business done in  the state), *with id.* ' 171.103(2) (Aeach service

**13**

performed in this state@does constitute gross receipts of a corporation from its business done in the state). To succeed in its claim, Westcott is required to show that, as applied to a large number of taxpayers, the classification actually resulted in discrimination between similarly situated taxpayers. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 241 (Tex. App.CAustin 1996, writ denied). Westcott has failed to meet this burden.

## CONCLUSION

We hold that Westcott=s services were performed in Texas and are therefore subject to the state=s franchise tax. The fact that the tax is imposed on receipts gained through the course of interstate commerce does not invalidate the imposition of a facially non-discriminatory tax. Furthermore, Westcott has failed to show the tax bears no rational relationship to any legitimate state interest and makes an arbitrary and unreasonable distinction between taxpayers. For the foregoing reasons, we affirm the judgment of the district court.

David Puryear, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed: March 20, 2003