# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00524-CV

**State Farm Lloyds, Appellant**

**v.**

**Mike Geeslin (successor to José Montemayor) in his official capacity as Commissioner of Insurance and Texas Department of Insurance, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN500331, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

### O P I N I O N

In this appeal, State Farm Lloyds appeals an enforcement action initiated by the Texas Department of Insurance ("TDI" or the "department").[1] Purporting to exercise its general enforcement authority under article 1.02 and chapters 82 and 84 of the insurance code, TDI initiated enforcement action against State Farm Lloyds, seeking (1) to prevent State Farm Lloyds from charging its current rates, which, according to TDI, were excessive; (2) to require State Farm Lloyds to pay restitution to affected policyholders; and (3) to impose sanctions on State Farm Lloyds. The parties filed cross motions for summary judgment in district court, seeking declarations as to TDI's authority to act and impose sanctions under article 1.02 and chapters 82 and 84 of the insurance

---

[1] Because their interests do not diverge, we refer to appellees collectively, but, when necessary in recounting historical facts, we distinguish between the actions of the commissioner and TDI.

code. *See* Tex. Ins. Code Ann. art. 1.02, §§ 82.051-.056, 84.021-.022 (West Supp. 2005). The trial court denied State Farm Lloyds's motion for summary judgment and granted TDI's motion, holding that TDI could seek restitution and sanctions from State Farm Lloyds based on State Farm Lloyds's allegedly excessive rates. We reverse and render judgment in favor of State Farm Lloyds.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, the Texas Legislature passed Senate Bill 14, which amended the insurance code to establish a new system for regulating residential property insurance rates. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907. Through SB 14, the legislature sought to address perceived problems under the then-existing flexible rate-setting insurance scheme, under which only five percent of the Texas homeowners insurance market was regulated. House Research Organization, Bill Analysis, Tex. S.B. 14, 78th Leg., R.S. (2003); House Comm. Report, Tex. S.B. 14, 78th Leg., R.S. (2003). When legislators proposed SB 14, insurance premiums in Texas were the highest in the country, often for reduced coverage. *Id.* Under the new system established by SB 14, insurers were required to file their rates with TDI, and TDI could review and approve or disapprove these rates.

The changes to the system of insurance regulation were implemented in three phases. Article 5.26-1, effective June 11, 2003, through September 1, 2004, established a one-time procedure for quickly bringing all Texas homeowners insurers under this new rate-regulation program. According to its terms, insurers were required to file their initial regulated rates with TDI within twenty days of the effective date of SB 14, June 11, 2003, and to implement the rates immediately. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907, 921 (Tex. Ins. Code former

2

art. 5.26-1, § 2(a)). Within forty days of the filing deadline, TDI was required to review and either approve or modify the initial rates. *Id.* former art. 5.26-1, § 2(b). If TDI failed to act within the designated statutory time period, the insurer's filed rates were deemed approved. *Id.* former art. 5.26-1, § 2(c).

After the initial filing, article 5.142, effective June 11, 2003 through December 1, 2004, provided temporary rate-regulation procedures. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907, 907 (Tex. Ins. Code former art. 5.142). Under the terms of article 5.142, insurers were required to file their rates with TDI and await the commissioner's approval before implementing these rates. *Id.* former art. 5.142, § 5. Thus, if insurers wanted to change their initial article 5.26-1 rates during this period, they could do so under the terms of article 5.142, which required prior approval of a new rate before the new rate could be used. *See id.*

Finally, after December 1, 2004, article 5.13-2 allowed insurers to file rates and implement the rates immediately without prior approval. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907, 928 (Tex. Ins. Code former art. 5.13-2, § 5). Under this permanent file-and-use system, insurers can use proposed rates immediately, but TDI can review and either disapprove the rates before they go into effect or disapprove further use of the filed rates after they go into effect. *Id.* former art. 5.13-2, §§ 5, 7.

State Farm Lloyds filed its then-existing rates with TDI on June 26, 2003, as its initial rates under article 5.26-1. *Id.* former art. 5.26-1 § 4. On August 18, 2003, TDI notified State Farm Lloyds of its determination that the rates must be reduced by twelve percent because the rates "are not reasonable for the risks to which they apply." State Farm Lloyds appealed.

State Farm Lloyds requested a hearing before the commissioner, as authorized by article 5.26-1. The commissioner heard the merits of the case on September 2 and 3, 2003. To prevail in its appeal under the terms of article 5.26-1, State Farm Lloyds was required to satisfy the insurer's statutory proof requirement—to show by clear and convincing evidence that the rate reduction specified by TDI would produce inadequate rates. *Id.* An inadequate rate was defined as a rate that is "insufficient to sustain projected losses and expenses" and "endangers the solvency of an insurer using the rate." Tex. Ins. Code former art. 5.142, § 2(b)(2); *see also id.* former art. 5.26-1, § 1(b) ("The definitions adopted under article 5.142 of this code apply to this article."). Following the hearing, the commissioner issued a final order affirming the department's rate reduction, stating in a single conclusion of law that the rates recommended by TDI would produce adequate base rates for State Farm Lloyds.

State Farm Lloyds sought judicial review in district court. The district court granted summary judgment in favor of State Farm Lloyds, declaring appellees' actions void and unenforceable, vacating the commissioner's rate order, and denying appellees' request to remand the case for further administrative proceedings. According to the district court, article 5.26-1 was unconstitutional on its face and as applied because it violated the due course of law provision of the Texas Constitution and the due process clause of the United States Constitution. Article 5.26-1 was also unconstitutional, the court found, because it violated the takings provisions of both the Texas Constitution and the United States Constitution. Further, the court found that appellees had denied State Farm Lloyds due process by failing to follow the applicable contested case provisions of the Administrative Procedure Act ("APA") and TDI's own contested case rules. *See*

4

Tex. Gov't Code Ann. §§ 2001.051-.178 (West 2000); 28 Tex. Admin. Code §§ 1.1-.90 (2003). The commissioner and TDI appealed to this Court. *See Geeslin v. State Farm Lloyds*, 255 S.W.3d 786 (Tex. App.—Austin 2008, no pet.).

Nine days after the trial court declared TDI's rate order void, TDI initiated disciplinary action against State Farm Lloyds, seeking to require State Farm Lloyds to cease and desist from charging allegedly excessive rates and to pay restitution to affected policyholders. TDI also sought to impose sanctions on State Farm Lloyds, arguing that, pursuant to articles 1.02 and 5.144, rates filed and used by State Farm Lloyds since June 26, 2003, were excessive. *See* Tex. Ins. Code Ann. art. 1.02; Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907, 912 (Tex. Ins. Code former art. 5.144). The parties filed cross motions for summary judgment in district court, seeking declarations as to TDI's authority to act and impose sanctions under article 1.02 and chapters 82 and 84 of the insurance code.[2] *See* Tex. Ins. Code Ann. art. 1.02, §§ 82.051-.056, 84.021-.022.

The trial court denied State Farm Lloyds's motion for summary judgment and granted TDI's motion, holding that TDI could seek restitution and sanctions from State Farm Lloyds based on State Farm Lloyds's allegedly excessive rates. State Farm Lloyds now appeals to this court.

On May 22, 2008, this Court issued its decision in the first rate appeal. *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786. We concluded that the portion of section 4 of article 5.26-1

---

[2] While the case was pending in district court, TDI referred the disciplinary action to the State Office of Administrative Hearings ("SOAH"). The SOAH judge abated the action pending final decision by this Court in the first rate appeal, *Geeslin v. State Farm Lloyds*, cause number 03-05-00067-CV.

setting out the insurer's proof requirement is unconstitutional on its face and as applied to State Farm Lloyds and that State Farm Lloyds was denied any constitutionally meaningful review of TDI's rate order. Accordingly, we affirmed the judgment of the trial court as to the insurer's proof requirement and as to due process. We severed the unconstitutional provision requiring an insurer to prove that a rate reduction by TDI would produce inadequate rates, reversed the trial court's judgment as to the constitutionality of the remainder of the statute, and remanded to the department for further proceedings consistent with the opinion. As we explained, under the remaining, valid provisions of article 5.26-1, an insurer must show by clear and convincing evidence that a rate filed under article 5.26-1 is "just, reasonable, adequate, not excessive, and not unfairly discriminatory for the risks to which it applies," which means that the rate must allow for a "reasonable profit," but not one that is "unreasonably high in relationship to the insurance coverage provided." *See* Tex. Ins. Code Ann. art. 1.02(c)(1-3); former arts. 5.26-1, § 2(b), 5.142, §§ 2(b)(1-3), 3(d).

## ANALYSIS

In two related issues, State Farm Lloyds argues that the commissioner had no authority to use the general enforcement provisions of article 1.02 and chapters 82 and 84 of the insurance code to seek restitution and penalties from State Farm Lloyds for charging rates that it was authorized to charge under articles 5.26-1 and 5.142 of the code. In response, TDI contends that the rates charged by State Farm Lloyds were never approved and, consequently, that the commissioner's only tool for addressing State Farm Lloyds's allegedly "excessive" rates was his general enforcement powers.

6

The propriety of summary judgment is a question of law. *Westcott Commc'ns, Inc. v. Strayhorn*, 104 S.W.3d 141, 145 (Tex. App.—Austin 2003, pet. denied). We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When the material facts are not in dispute, both parties move for summary judgment, and the district court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Here, the propriety of summary judgment turns on issues of statutory construction and agency authority. Statutory construction presents a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85. We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Taylor v. Firemen's and Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 189 (Tex. 1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004)). Further, when construing a statute, we consider statutory language in context, not isolation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Our analysis of the statutory text is also

7

informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2) & (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, and "consequences of a particular construction." *Id.* § 311.023(1), (2), (3) & (5) (West 2005). We also presume that the legislature acted with knowledge of the background law. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

The legislature prescribed a specific method by which TDI could disapprove rates that were either filed under article 5.26-1 or subsequently modified by the insurer under article 5.142. From June 11, 2003, to December 1, 2004, TDI could have addressed allegedly excessive article 5.26-1 or 5.142 rates under the provisions of article 5.142.[3] Under section 6 of article 5.142, the commissioner is authorized to withdraw approval of a filed rate. Tex. Ins. Code former art. 5.142, § 6. To withdraw approval of an existing rate, the commissioner conducts a hearing on the filed rate, explains how the rate fails to meet the requirements of article 5.142, and specifies an interim rate, if necessary. *Id.*

Here, rather than following the legislature's method for challenging a commissioner's order on an article 5.26-1 initial rate filing and appeal, TDI initiated an enforcement proceeding against State Farm Lloyds nine days after the trial court issued its judgment.[4] TDI contends that the rate-disapproval mechanism of article 5.142 was unavailable because State Farm Lloyds never filed

[3] After December 1, 2004, TDI could have addressed allegedly excessive rates through the same process under article 5.13-2. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907, 928 (Tex. Ins. Code former art. 5.13-2).

[4] The enforcement proceeding was initiated on November 17, 2004, 84 days before TDI filed its notice of appeal on February 9, 2005.

8

a rate or obtained approval under article 5.142, which refers specifically to disapproval or withdrawal of approval in the context of "a rate filed under this article." *See id.* State Farm Lloyds responds that its June 26, 2003 rate filing was a filing under both article 5.26-1 and article 5.142 and that its rates were approved under both statutes.[5]

To give meaning to articles 5.26-1 and 5.142, we must assume that a rate filed and approved under article 5.26-1 continues as the insurer's approved rate under article 5.142. Article 5.26-1 required each insurer subject to article 5.142 to file its initial rates under article 5.26-1. Tex. Ins. Code former art. 5.26-1, § 2(a). Article 5.26-1 provided expedited procedures for rate filing; however, once approved, those rates continued in effect under article 5.142. *See id.* former art. 5.26-1, § 2(b) (explaining that a rate is deemed approved if neither approved nor disapproved by the department within 60 or 90 days of the effective date of article 5.26-1, depending on the size of the insurer). Nothing in article 5.26-1 indicates that a rate filed and approved under that article

---

[5] State Farm Lloyds bases this argument on the first of two cover letters accompanying its June 26, 2003 rate filing. In its first letter, Jeffrey F. McCarty, State Farm Lloyds's Actuary and Assistant Secretary Treasurer, referenced SB 14 and article 5.142: "Pursuant to the enactment of SB 14 on June 10, 2003, we respectfully submit the enclosed filing as provided under Article 5.142." In State Farm Lloyds's second cover letter, Ronald T. Dodd, President and CEO, referenced SB 14 generally but referenced neither article 5.26-1 nor article 5.142 specifically: "In compliance with the provisions of Senate Bill 14, the following rate filing is presented by State Farm Lloyds for review by the Texas Department of Insurance (TDI)."

Although the parties dispute the statutory effect of State Farm Lloyds's rate filing, they agree that State Farm Lloyds filed rates with TDI on June 26, 2003. The question of whether those rates qualify as filed rates under article 5.142 is a question of law, which we address below. *See, e.g.*, *Doyer v. Pitney Bowes, Inc.*, 80 S.W.3d 215, 218 (Tex. App.—Austin 2002, pet. denied) (holding that applicability of a statute is a question of law); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding that construction of a statute is a question of law); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1993) (holding that applicability and interpretation of a statute is a question of law).

9

expires or otherwise becomes disapproved once article 5.142 takes effect. *See id.* In the absence of any such language, we conclude that an approved rate under article 5.26-1 continues as an approved rate under article 5.142, which provides insurers with rate-filing directives after their initial rate filing under article 5.26-1. *See Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137-38 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (agency cannot act contrary to its statute).

Under TDI's interpretation, an insurer would be required to either file rates under article 5.26-1 and immediately file again under article 5.142 or file rates under both articles simultaneously. Otherwise, after article 5.26-1 expired on September 1, 2004, and until rate proceedings were conducted under article 5.142, no insurer would have filed or approved rates until TDI again conducted the review and modification or approval of those rates. Such an interpretation would either require parallel rate-review proceedings or two consecutive rate-review proceedings and would render rates that were filed and approved under article 5.26-1 ineffective after the expiration of article 5.26-1 on September 1, 2004. This interpretation could, likewise, lead to the absurd result alluded to by State Farm Lloyds whereby, if an insurer files under both articles simultaneously, a charged rate could be deemed approved under one provision (article 5.142) if, for example, the department failed to act, but disapproved under another (article 5.26-1), if the department disapproved the rate.

We find TDI's interpretation to be contrary to the legislature's intent. The legislature set up a system under which initial rates for insurers subject to article 5.142 were to be quickly established under article 5.26-1 and remain in effect thereafter under article 5.142. *See id.* former art. 5.26-1, § 2(a). The initial rate-filing procedures would provide immediate relief for Texans,

who were paying the highest homeowners insurance rates in the nation. *See* House Research Organization, Bill Analysis, Tex. S.B. 14, 78th Leg., R.S. (2003). Thereafter, insurers could modify their initially filed rates by filing new rates under article 5.142 or, after December 1, 2004, under article 5.13-2. *See* Tex. Ins. Code former arts. 5.142, § 4, 5.13-2, § 5. Nothing in article 5.142 parallels the initial rate-filing procedures of 5.26-1. Article 5.142 contains no "Initial Rate Filing" section and no timeline or rate-filing deadlines, indicating the legislature's intent that article 5.142 establish the procedures by which rates are changed once established, but not the procedures by which those rates are initially established. Further, provisions in the two articles indicate that the legislature intended the two to be read in conjunction with each other in order to operate as a cohesive unit. *See City of Rockwall*, 246 S.W.3d at 625-26; *Helena Chem. Co.*, 47 S.W.3d at 493. For example, article 5.26-1 provides that "definitions adopted under Article 5.142 of this code apply to this article" and that "each insurer subject to Article 5.142 of this code must file the insurer's rates, supporting information, and supplementary rating information with the commissioner." *Id.* former art. 5.26-1, §§ 1(b), 2(a). Similarly, article 5.142, by providing no mechanism for establishing an initial rate, assumes that an initial, approved rate has already been established under article 5.26-1. *Id.* former art. 5.142; *see* Tex. Gov't Code Ann. § 311.021(2) & (3).

In this case, because the commissioner's rate order was vacated by the district court and appealed to this Court, State Farm Lloyds was authorized to continue to charge its initial rates as its approved and effective rates while the appeal was pending.[6] *See* Tex. Ins. Code former

---

[6] Pursuant to our decision in *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786 (Tex. App.—Austin 2008, no pet.), the initial rate proceeding has been remanded to TDI for further proceedings consistent with our opinion. Thus, although State Farm Lloyds was authorized to charge

11

art. 5.26-1, § 5(b).  We conclude that the rates filed by State Farm Lloyds on June 26, 2003, once authorized by virtue of a pending appeal, continued in effect under article 5.142.  Therefore, we need not reach State Farm Lloyd's contention that it's filing under article 5.26-1 also sufficed as a filing under article 5.142.

Having determined that State Farm Lloyds was authorized to charge its initial rates during the pending appeal, we turn to the issue of TDI's enforcement authority.  TDI has invoked its general enforcement authority under article 1.02 and chapters 82 and 84 to address allegedly excessive rates rather than asserting its authority under the established procedures of articles 5.26-1, 5.142, and 5.13-2.  As noted, TDI had already acted to disapprove State Farm Lloyds's initial rates and to reduce those rates by twelve percent.  *See* Tex. Ins. Code former art. 5.26-1, § 2(b).  State Farm Lloyds appealed that determination.  Because the appeal was still pending, however, State Farm Lloyds was authorized to continue to charge its initial rates.  *See id.* § 5(b).

Article 5.26-1 explicitly directs that, in the event of an appeal, the insurer is authorized to charge either its initial rates or the commissioner's rates.  *Id.* § 5(b).  However, article 5.26-1 includes a refund provision such that, depending on the outcome on appeal, the insurer can be required to refund the difference, if any, in overcharged premiums to each policyholder, plus interest.  *Id.* § 6.  Even though the legislature permitted the insurer to continue to charge rates that may later be determined to be excessive, it provided a mechanism for recouping those allegedly excessive rates if the insurer opts to continue to charge those rates while the appeal is pending.

_____

its filed rates while the appeal was pending, those rates will be subject to review by TDI on remand, as set out in our opinion, and, if found to be excessive, State Farm Lloyds will be required to refund the excessive portion plus interest to its insureds.

Thus, TDI could have simply awaited the outcome of an appeal with the assurance that, even if the insureds were being charged excessive rates, they would receive refunds of the excessive portion, plus interest. If TDI ultimately prevails, its twelve percent rate reduction will be reinstated, and State Farm Lloyds will be required to refund the overcharged amount plus interest to its affected policyholders. State Farm Lloyds acknowledged as much in its brief:

> If State Farm Lloyds loses, and the Commissioner's Rate Reduction Order is reinstated on appeal, then Articles 5.26-1 and 5.142 provide their own remedy for any overcharges during that period. State Farm Lloyds will be required to refund the "overcharged premium" to each policyholder, plus interest, in accordance with the terms of those statutes.

Pursuant to the terms of article 5.26-1, State Farm Lloyds opted to continue to charge its initial rates while the appeal was pending. Depending on the result of the hearing on remand, State Farm Lloyds may ultimately be required to refund overcharges with interest.

This statutory scheme manifests a legislative intent that during an appeal regarding the excessiveness of their rates, insurers may opt to charge their initial rates, subject to the remedy of a refund if the insurer ultimately loses. This scheme would be undermined by TDI's broad construction of its general enforcement powers under article 1.02 and chapters 82 and 84. We cannot conclude that the legislature intended that the commissioner could penalize under its general enforcement powers ,the very conduct the legislature authorized in articles 5.26–1, 5.142, and 5.13-2. *Id.* former arts. 5.26-1, 5.142, 5.13-2; *see also Sexton*, 720 S.W.2d at 137-38. We also observe that an article 5.26-1 hearing and appeal would be meaningless if the commissioner could simply use his general enforcement authority to negate any unfavorable outcome. TDI would have no reason to act

13

to disapprove a rate under articles 5.26-1, 5.142, and 5.13-2 if it could simply employ its general enforcement authority to recover for excessive rates and to impose sanctions, which are unavailable under articles 5.26-1, 5.142, and 5.13-2.

We must presume that the legislature intended to give meaning to each statutory provision, and accordingly conclude that the commissioner's enforcement powers under article 1.02 and chapters 82 and 84 do not authorize him to penalize conduct authorized by articles 5.26-1, 5.142, and 5.13-2. *See Williams v. Texas State Bd. of Orthotics & Prosthetics*, 150 S.W.3d 563, 573 (Tex. App.—Austin 2004, no pet.) (explaining that rules of statutory construction require a court to avoid constructions that would render provisions useless or meaningless); *see also Cole v. Army Nat'l Guard*, 909 S.W.2d 535, 539 (Tex. App.—Austin 1995, writ denied) ("Where a [statutory] power is granted, and the method of its exercise prescribed, the prescribed method excludes all others, and must be followed.") (quoting *Foster v. City of Waco*, 255 S.W. 1104, 1105 (Tex. 1923)). Moreover, even if article 1.02 and chapters 82 and 84 could be construed as conflicting with articles 5.26-1, 5.142, and 5.132, the latter provisions would control. *See Daughters of Charity Health Servs. of Waco v. Linnstaeder*, 226 S.W.3d 409, 411 (Tex. 2007) (giving both statutes effect by treating more specific one as limited exception to more general one); Tex. Gov't Code Ann. § 311.026 (West 2005) (if a specific and general provision cannot be harmonized, the "special . . . provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail").

We conclude that TDI had no authority to initiate enforcement action against State Farm Lloyds for continuing to charge its initial rates while its appeal was pending, as authorized by

14

article 5.26-1, section 5(b). For the same reasons, we also find that penalties were not authorized. We sustain State Farm Lloyds's points of error.

## CONCLUSION

The commissioner had no authority to use the general enforcement provisions of article 1.02 and chapters 82 and 84 to seek restitution and penalties from State Farm Lloyds for charging its filed rates. Therefore, we conclude that the commissioner had no authority to issue the disciplinary order against State Farm Lloyds. Accordingly, we reverse the trial court's judgment and render judgment in favor of State Farm Lloyds, granting State Farm Lloyds's request for declaratory relief.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Reversed and Rendered

Filed: August 22, 2008

15