VINMAR, INC. f/k/a Vinmar
Impex, Inc., Petitioner,

v.

HARRIS COUNTY APPRAISAL DIS-
TRICT and Harris County Apprais-
al Review Board, Respondents.

No. 95-0243.

Supreme Court of Texas.

June 20, 1997.

Katja Glockner, James J. Sentner, Jr.,
Houston, for Petitioner.

Kenneth Wall, Houston, for Respondents.

ABBOTT, Justice, delivered the opinion of
the Court, in which GONZALEZ, CORNYN,
SPECTOR and BAKER, Justices, join.

This is an appeal of a trial court's judg-
ment in favor of the appraisal district in a
suit protesting the assessment of property
taxes on goods awaiting export. Because we
conclude that the tax violates the Commerce
Clause of the United States Constitution, we
reverse the judgment of the court of appeals
and remand this case to the trial court for
entry of judgment consistent with this opin-
ion.

*I*

Vinmar, Inc. is a Texas corporation with
its principal place of business in Houston.
Upon receiving an order from a client in a
foreign country, Vinmar purchases plastic
resin from vendors in the United States.
After Vinmar purchases the resin, it seeks
the foreign import clearances, currency
clearances, and letters of credit necessary to
complete the transaction. The Harris Coun-
ty Appraisal District assessed taxes against
the resin held by Vinmar in a Houston ware-
house on January 1 of 1989 and 1990.

The facts in *Virginia Indonesia Co. v.
Harris County Appraisal Dist. and Harris
County Appraisal Review Bd.,* 910 S.W.2d
905 (Tex.1995), *cert. denied,* —— U.S. ——,
116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996)
("*VICO* "), are strikingly similar to the facts
in this case. In *VICO,* just as in this case,
the Harris County Appraisal District as-
sessed taxes against property that VICO
purchased for export and temporarily stored
in Harris County while awaiting import
clearance and related transportation activi-
ties. In *VICO,* we held that the assessment
of ad valorem taxes against such property

violated the Import–Export Clause of the United States Constitution. *Virginia Indonesia Co.,* 910 S.W.2d at 906, 915.

In this case, Vinmar does not assert that the tax violated the Import–Export Clause. Instead, Vinmar relies on the Commerce Clause and the Equal Protection Clause of the United States Constitution.

## II

■ Vinmar asserts that the property tax assessed in this case violates the Commerce Clause of the United States Constitution. The United States Supreme Court set out a four-pronged test for evaluating whether a state tax complies with the Commerce Clause of the United States Constitution. U.S. CONST. art. I, § 8, cl. 3. To be valid, a state tax must: 1) apply to an activity having a substantial nexus with the taxing state; 2) be fairly apportioned; 3) not discriminate against interstate commerce; and 4) be fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279–287, 97 S.Ct. 1076, 1079–83, 51 L.Ed.2d 326 (1977). If the tax is on foreign commerce, in addition to the *Complete Auto* criteria, the tax must not: 1) create a substantial risk of international multiple taxation; or 2) prevent the federal government from speaking with one voice in its regulation of commercial relations with foreign governments. *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 1823–24, 60 L.Ed.2d 336 (1979). In order to establish that a state tax is unconstitutional, the taxpayer need only prove that the tax fails one of the six criteria announced in *Complete Auto* and *Japan Line. See Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 175–76, 103 S.Ct. 2933, 2945–46, 77 L.Ed.2d 545 (1983).

■ The one-voice prong of the test used to analyze state taxes under the Commerce Clause is the same as the one-voice prong of the test used to analyze cases under the Import–Export Clause. *Itel Containers Int'l Corp. v. Huddleston,* 507 U.S. 60, 77, 113 S.Ct. 1095, 1105–06, 122 L.Ed.2d 421 (1993). In *VICO,* this Court held that an ad valorem

tax assessed against goods awaiting export under the same circumstances as in this case violated the one-voice prong of the Import–Export Clause test. *Virginia Indonesia Co.,* 910 S.W.2d at 914. Likewise, the tax in this case interferes with the federal government's ability to speak with one voice in its regulation of commercial relations with foreign governments. *See Japan Line,* 441 U.S. at 449–51, 99 S.Ct. at 1822–23. Thus, we hold that the tax on Vinmar's goods violates the Commerce Clause of the United States Constitution.[1] *See Itel Containers Int'l Corp.,* 507 U.S. at 77, 113 S.Ct. at 1105–06; *Cf. Virginia Indonesia Co.,* 910 S.W.2d at 915.

Accordingly, pursuant to Rule 170 of the Texas Rules of Appellate Procedure, the Court, without hearing oral argument, reverses the judgment of the court of appeals and remands the case to the trial court for entry of judgment consistent with this opinion.

HECHT, Justice, filed a dissenting opinion, in which PHILLIPS, Chief Justice, ENOCH and OWEN, Justices, join.

Contrary to what the Court says, the facts in this case are not "the same", *ante* at 555, as those in *Virginia Indonesia Company v. Harris County Appraisal District,* 910 S.W.2d 905 (Tex.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996). The taxing authorities here have not attempted to tax property that has actually entered the export stream. Therefore, the judgments of the lower courts are correct and should be affirmed. Accordingly, I respectfully dissent.

Plaintiff Vinmar, Inc. (formerly known as Vinmar Impex, Inc.) sued the Harris County Appraisal District and the Harris County Appraisal Review Board, challenging their assessment of ad valorem taxes on plastic resins Vinmar purchases, on orders it receives from overseas customers, and on property stored in Harris County pending export. Vinmar complained that the taxes violated various provisions of the state and federal constitutions. The district court rendered

---

1. Because we find that the tax in question violates the one-voice prong of the *Complete* *Auto/Japan Line* test, we do not address Vinmar's other point of error.

judgment for the taxing authorities. On petition for writ of error, Vinmar argues only that the taxes violate the Commerce Clause of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment. The *court of appeals affirmed.* 890 S.W.2d 493.

This case was submitted to the district court on an agreed statement of facts. TEX.R. CIV. P. 263. I quote the relevant portions of that statement, omitting section divisions and combining some paragraphs:

Plaintiff is a corporation organized and existing under the laws of the State of Texas and its principal place of business is located in Houston, Harris County, Texas.

The instant case is an ad valorem tax suit brought by Plaintiff Vinmar pursuant to Chapter 42 of the Texas Property Tax Code challenging the inclusion of certain of its property on the Defendants' appraisal rolls for the 1989 and 1990 tax years. Plaintiff Vinmar protested the inclusion of the property in such appraisal rolls to Defendant Harris County Appraisal Review Board pursuant to Chapter 41 of the Texas Property Tax Code on the grounds that the property is not subject to ad valorem taxation in Texas because the product is purchased for export. Vinmar alleges that taxation of Vinmar's product by the State of Texas and its political subdivisions is therefore precluded by the Commerce, Import–Export, Due Process and Equal Protection clauses of the United States Constitution and the Due Course of Law, Equal Protection, and Uniform Tax clauses of the Texas Constitution. Plaintiff Vinmar admits the taxation of its product for the 1989 and 1990 tax years is in all respects valid except to the extent that its taxation may be precluded by the Commerce, Import–Export, Due Process and Equal Protection clauses of the United States Constitution and the Due Course of Law, Equal Protection, and Uniform Tax clauses of the Texas Constitution.

Plaintiff has complied with all prerequisites for filing and maintaining the instant lawsuit and this Court has jurisdiction to hear and decide this case.

The various accounts under which Harris County Appraisal District appraised and taxed Plaintiff Vinmar's personal property are described in the attached Addendum which is incorporated herein by reference.

Vinmar, Inc. is in the business of purchasing quantities of plastic resin for foreign customers and exporting the plastic resin to the appropriate country. Plaintiff Vinmar purchases goods to fill contract orders that it has already received from its customers, and all of the goods are destined for foreign countries.

Prior to purchasing the resin, Vinmar obtains orders from its customers and enters into contracts with them. Vinmar then enters into the market to locate and purchase the goods. Once Vinmar locates the necessary grade of product, Vinmar purchases the goods dedicated to the contract of sale and has those goods shipped by common carrier to a warehouse in Houston to await finalization of import clearance, currency control procedures, and letters of credit after which Vinmar arranges for transportation of the goods to the customer in the foreign country.

Vinmar's profit margin is small, usually approximately 2%. While the goods are at the warehouse, Vinmar incurs daily storage charges. Vinmar cannot pass these storage charges onto its customer. Payment of personal property taxes on these goods purchased for export can render the transactions profitless and Vinmar then faces the possibility of sustaining a loss on the transaction.

The goods or property that is the subject of this litigation were in warehouses in Houston, Texas on January 1 of the year for which the disputed personal property taxes were assessed.

The foreign countries to which Vinmar ships the goods that it has sold have stringent currency controls which require that those purchasing goods first obtain from their government an import permit or license, a foreign exchange permit, and a foreign exchange clearance letter. Import permits are very scarce because of governmental limitations on foreign exchange.

Policies regarding the issuance of the import permit are changed frequently, and the permits are granted on essentially a case by case basis. In order to obtain an import permit, one must first prove to the government's satisfaction that the goods or material to be imported are not available within the country. Once the importer has obtained the import permit or license, the importer must then obtain a foreign exchange permit and a clearance letter granting permission for the importer to pay for the imported goods with U.S. dollars. These documents are difficult to obtain because there is a shortage of U.S. dollars in the countries to which Vinmar exports the goods. Once the importer has obtained the import permit or license, the foreign exchange permit, and clearance letter, a bank will issue either a letter of credit or arrange for other means of paying for the imported goods with U.S. dollars. However, no bank will make any of these payment arrangements until the importer has complied with all of the legal formalities and has been issued the necessary permits, licenses, and letters. Obtaining the permits, licenses, and letters can be a lengthy process even for those importers who obtained similar documents in the past.

Plaintiff Vinmar has incurred $52,796.45 in attorneys' fees in connection with bringing and prosecuting these consolidated lawsuits.

In *VICO*, the facts were as follows:

VICO, a Delaware corporation, is the operator and agent for an Indonesian oil and gas exploration joint venture. As one of its duties as operator, VICO purchases goods from vendors throughout the United States on behalf of the joint venture. Pursuant to a production sharing agreement between the joint venture and Pertamina, a state enterprise of the Republic of Indonesia, the goods become the property of Pertamina upon arrival in Indonesia. VICO is reimbursed for its costs, but it receives no additional compensation.

VICO uses a standard purchase order marked "FOREIGN PURCHASE ORDER" that includes the notation "Ultimate destination for all items on this order is Indonesia." At the time of purchase, the goods are committed to foreign export and cannot thereafter be diverted to domestic use. The goods are transported from the vendors directly to an independent export packer in Houston, Harris County, Texas. Upon arriving at the export packer's facility, the goods are checked to confirm that the proper items were shipped, and that they meet specifications required for import to Indonesia. Any dispute over the items are resolved at that time. VICO then requests approval from Indonesia to import the goods. When approval is granted, an international inspection agency inspects the goods on behalf of Indonesia and clears the goods for shipment. The goods are then packed and shipped abroad on the next available vessel.

In most instances, the goods remain with the export packer no longer than 45 days while these procedures are being performed. In exceptional cases, however, this period may be somewhat longer: if the goods received from the vendor are damaged or defective, or if VICO encounters problems obtaining approval for import to Indonesia, the goods may remain with the export packer for up to 175 days. VICO has some quantity of goods present at the export packer's facility year-round.

*VICO*, 910 S.W.2d at 906–907.

The important differences between *VICO* and this case are as follows:

| | |
|---|---|
| VICO was a Delaware corporation with no place of business in Texas. | Vinmar is a Texas corporation with its principal place of business in Harris County, Texas. |
| VICO was the domestic operator and agent for a single foreign entity, an Indonesian oil and gas exploration joint venture. | Vinmar is a domestic business with various foreign customers. |
| VICO purchased various goods only as directed by its principal. | Vinmar purchases one product, plastic resin, to fill contract orders from its customers. |

| | |
|---|---|
| VICO never bought a stock of goods from which to supply its principal. | Vinmar purchases quantities of plastic resin from which it fills orders from its customers. |
| VICO obtained reimbursement of its costs from its principal with no additional compensation or profit. | Vinmar sells the goods it obtains for a profit, albeit a very small one. |
| VICO's goods were stored with an independent export packer until shipped. | Vinmar's goods are stored in its leased public warehouse space in Harris County. |
| Shipment of VICO's goods was delayed solely for the purpose of verifying their suitability to the foreign principal and packing for shipment. | Shipment of Vinmar's goods is delayed until payment to Vinmar can be arranged. |
| VICO's goods usually remained in Harris County no more than 45 days (only 20% had been there longer on the date taxes were assessed). | Vinmar's goods usually remain in Harris County for the lengthy period required to complete arrangements for payment and shipping. |

The Court held in *VICO* that state taxation of goods "in transit" in the export stream violates the Import–Export Clause of the United States Constitution. U.S. CONST. art. I, § 10, cl. 2. Vinmar does not rely on that constitutional provision, but on the Commerce Clause and the Equal Protection Clause. Vinmar's plastic resin simply had not entered the export stream while awaiting shipment in Harris County.

In *Kosydar v. National Cash Register Co.,* 417 U.S. 62, 94 S.Ct. 2108, 40 L.Ed.2d 660 (1974), the Court held that machines custom-built for foreign customers could be taxed while held by the manufacturer awaiting shipment because the machines had not actually begun their foreign journey. The tax did not violate the Import–Export Clause, despite the fact that the machines could not be sold domestically because of their unique construction and special adaptation to foreign use. *See Coe v. Errol,* 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886)(logs cut in New Hampshire and deposited at a river port in that state with the intent that they be floated downriver to Maine, had not begun their voyage to Maine and were subject to the port's nondiscriminatory tax); *Empresa Siderurgica v. County of Merced,* 337 U.S. 154, 69 S.Ct. 995, 93 L.Ed. 1276 (1949)(parts of a cement plant which had been sold to a foreign buyer and was in the process of being dismantled and shipped, which had not actually begun their journey abroad, were subject to local tax). *Cf. United States v. Int'l Business Machines Corp.,* 517 U.S. ——, 116 S.Ct. 1793, 135 L.E.2d 124 (1996)(the Export Clause, U.S. CONST. art. I, § 9, cl. 5, does not permit a nondiscriminatory tax on export goods in transit); *A.G. Spalding & Bros. v. Edwards,* 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865 (1923)(sale of baseballs and bats was exempt from federal excise tax after export carrier took delivery and title); *Richfield Oil Corp. v. State Bd. of Equalization,* 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946)(sale of oil exempt from state sales tax after foreign-bound vessel took delivery and title).

The stipulated facts in this case are that Vinmar's plastic resin is stored in warehouses until payment can be arranged. Rather clearly, the resin has not "commenced 'an actual movement into the stream of export'", *VICO,* 910 S.W.2d at 911 (quoting *Kosydar,* 417 U.S. at 71, 94 S.Ct. at 2113), until those arrangements have all been made and the foreign journey has actually begun.

Although *VICO* gave decisive weight to whether goods are "in transit", it also applied the "foreign relations" or "one voice" test of *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976). The policy of this test is that "the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive

power...." *Id.* at 285, 96 S.Ct. at 540; *see Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 1823, 60 L.Ed.2d 336 (1979). This test for applying the Import–Export Clause is also used in applying the Commerce Clause to foreign commerce. *Id.* at 451, 99 S.Ct. at 1823; *Itel Containers Int'l Corp. v. Huddleston,* 507 U.S. 60, 113 S.Ct. 1095, 122 L.Ed.2d 421 (1993).

*VICO* held that the tax in that case did not pass the "foreign relations" test because "Harris County is attempting to tax exports that will become the property of an Indonesian state agency upon arrival in Indonesia, and that are only temporarily within Harris County for the necessities of exportation, including compliance with Indonesian import requirements." *VICO,* 910 S.W.2d at 915. By contrast, Vinmar's plastic resin stays in Harris County, where Vinmar's principal place of business is, as long as it takes for Vinmar to be paid—sometimes a lengthy process.

The taxing authorities in this case are not taxing exports; they are taxing the property of a domestic corporation with its principal place of business in this State while the property is being stored pending export. If Vinmar's property is not subject to state and local taxation, I cannot see how this Court will allow any exporter's property to be taxed. There is no precedent for so broad a misreading of the Constitution's limits on the states' power to tax.

The tax in this case is nondiscriminatory; that is, it does not single out property awaiting export. It is imposed on all personal property in Harris County on January 1 each year. For this reason alone it does not violate either the Commerce Clause or the Equal Protection Clause. In my view, the United States Constitution does not exempt property from payment for its fair share of police and fire protection and other governmental services which benefit all property located in Harris County merely because the subject property will eventually be exported.

I respectfully dissent.