

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00209-CV

REKERDRES & SONS INSURANCE AGENCY, INC., APPELLANT

V.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS AND KEN PAXTON, ATTORNEY
GENERAL OF THE STATE OF TEXAS, APPELLEES

On Appeal from the 201st District Court
Travis County, Texas
Trial Court No. D-1-GN-16-006194; Honorable Tim Sulak, Presiding

September 24, 2020

OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, Rekerdres & Sons Insurance Agency, Inc., appeals from the trial court's orders granting the motion for partial summary judgment filed by Appellees, Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas, and denying its first amended motion for summary judgment.[1]

---

[1] Although the granting of Appellees' partial summary judgment did not dispose of all parties and claims, the parties stipulated to the remaining issues, reserving the legal issue of whether the Texas Merchant Receipts and Texas Warehouse Receipts were subject to premium tax on surplus lines insurance, thereby creating a final appealable judgment. The trial court signed an *Amended Final Judgment* on April 15, 2019.

Appellant challenges the trial court's orders through three issues: (1) whether the tax imposed at issue violated the Commerce Clause of the United States Constitution, (2) whether the tax imposed at issue violated the Import-Export Clause of the United States Constitution, and (3) whether the insurance at issue falls within the definition of "Export Property," as defined by Title 28, section 5.5002(2)(B) of the Texas Administrative Code, thus taking it out of the purview of the surplus lines insurance premiums subject to taxation. We will affirm the rulings of the trial court.[2]

### BACKGROUND

Appellant is a Texas corporation operating from an office in Dallas, Texas. Appellant brokered insurance policies with various Texas warehouses to insure bales of cotton temporarily stored at their facilities. The policies were underwritten by insurers not licensed to conduct business in Texas. Appellant received premiums from the Texas warehouses under these policies. There were two types of premiums, "Texas Warehouse Receipts" and "Texas Merchant Receipts." Both types of premiums covered the same risks to cotton stored at the warehouses but did so at different valuations.[3]

Appellee, the Texas Comptroller of Public Accounts, Glenn Hegar, audited Appellant for insurance premium tax compliance, for the period 2008 through 2011.[4] This audit resulted in the *Texas Notification of Audit Results*, dated August 22, 2012, and reflected a tax due of $65,646.60, a penalty of $6,564.66, and interest of $5,595.03. The

---

[2] Originally appealed to the Third Court of Appeals, sitting in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] Those valuations are not relevant to the issues in this appeal.

[4] The relevant "Tax Period" is from January 1, 2008, through December 31, 2011.

penalty was subsequently waived.  Appellant timely filed a *Petition for Redetermination* on September 21, 2012.  Appellant later paid, under protest, $82,862.05, an amount that included interest as provided in the Texas Tax and Government Codes.  In December 2016, Appellant filed suit against Appellees, seeking a refund of the insurance premium tax paid.  In its petition, Appellant asserted, among other things, that the tax imposed was in violation of the Commerce Clause of the United States Constitution,[5] that the tax imposed was in violation of the Import-Export Clause of the United States Constitution,[6] and that the insurance at issue was not "surplus lines insurance" subject to taxation, but rather "Ocean Marine Insurance" to which the tax did not apply.  On July 5, 2018, Appellant filed its *First Amended Traditional and No-Evidence Motion for Summary Judgment* arguing it was entitled to summary judgment, as a matter of law, based on the same legal arguments raised in its petition.  On August 6, 2018, Appellees filed their *Motion for Partial Summary Judgment*, seeking summary judgment that the State may tax both types of premiums involved in this case, i.e., Texas Warehouse Receipts and Texas Merchant Receipts, without violating the Commerce Clause or the Import-Export Clause of the United States Constitution.[7]

The trial court entered its orders denying Appellant's *Motion for Summary Judgment* and granting Appellees' *Motion for Partial Summary Judgment* on October 1,

---

[5] U.S. CONST. art. I, § 8, cl. 3. ("[Congress shall have the Power] To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . .").

[6] U.S. CONST. art. I, § 10, cl. 2.  ("No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing [its] inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul [sic] of the Congress.").

[7] Appellees moved for partial summary judgment because at that time, the parties had not yet reached an agreement regarding the portion of Texas Merchant Receipts Appellant received during the relevant tax period that were attributable to risk underwritten by insurers not licensed to do business in Texas.

2018.  On March 25, 2019, the trial court signed a *Final Judgment* indicating that both the Texas Warehouse Receipts and Texas Merchant Receipts received by Appellant during the relevant tax period were subject to surplus lines insurance premium tax.  The order also included the parties' agreement concerning the amounts of the Texas Merchants Receipts and the resulting tax amount.[8]  The trial court ordered that Appellant take nothing against Appellees and that Appellees were entitled to retain Appellant's protest payment.  The trial court also ordered that Appellant was liable to Appellees for the additional tax on the Texas Merchant Receipts.  Appellant challenges the trial court's rulings through this appeal.

STANDARD OF REVIEW

When, as here, parties file cross-motions for summary judgment, each party in support of its motion necessarily takes the position that there is no genuine issue of fact in the case and that it is entitled to judgment as a matter of law.  *Sw. Bell Tel. Co. v. Combs*, 270 S.W.3d 249, 259-60 (Tex. App.—Amarillo Oct. 28, 2008, pet. denied) (citing *City of Pflugerville v. Capital Metro. Transp. Auth.*, 123 S.W.3d 106, 109 (Tex. App.—Austin 2003, pet. denied)).  When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both sides, and determines all questions presented.  *Combs*, 270 S.W.3d at 260 (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

---

[8] Following suit, Appellees counterclaimed for tax due on Texas Merchant Receipts.  After summary judgment pleadings were filed, the parties stipulated that the portion of Texas Merchant Receipts received by Appellant during the relevant tax period totaled $206,185.57.  The parties also stipulated that the resulting tax totaled $10,000.00.

4

**ISSUE ONE—COMMERCE CLAUSE**

In its first issue, Appellant argues the trial court erred by denying Appellant's *First Amended Motion for Summary Judgment* and granting Appellees' *Motion for Partial Summary Judgment* because Appellant showed the tax imposed by Appellees against Appellant for the Texas Warehouse Receipts and the Texas Merchant Receipts was in violation of the Commerce Clause of the United States Constitution.

The Commerce Clause limits the states from interfering with interstate commerce. *Westcott Commc'ns., Inc. v. Strayhorn*, 104 S.W.3d 141, 147 (Tex. App.—Austin 2003, pet. denied) (citing U.S. CONST. art. I, § 8, cl. 3; *Freeman v. Hewit*, 329 U.S. 249, 252, 91 L. Ed. 265, 67 S. Ct. 274 (1946); *Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 298-99 (Tex. App.—Austin 2000, pet. denied)).  In *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977), the Supreme Court set forth the applicable test for analyzing whether a state tax affecting interstate commerce is consistent with the Constitution.  Consistent with that guidance, a tax affecting interstate commerce will be sustained if it (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state.  *Id.* .  If the tax is on foreign commerce, in addition to the *Complete Auto* criteria, the tax must also not create a substantial risk of international multiple taxation or prevent the federal government from speaking with one voice in its regulation of commercial relations with foreign governments.  *Vinmar, Inc. v. Harris Cnty. Appraisal Dist.*, 947 S.W.2d 554, 555 (Tex. 1997) (citing *Japan Line, Ltd. v. Cnty. of Los Angeles*, 441 U.S. 434, 451, 99 S. Ct. 1813, 60 L. Ed. 2d 336 (1979)).

To establish that a state tax is unconstitutional, the taxpayer is required only to prove that the tax fails any one of the six criteria announced in *Complete Auto* and *Japan Line*. *Vinmar*, 947 S.W.2d at 555 (citing *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 175-76, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983)). The "one-voice prong of the test used to analyze state taxes under the Commerce Clause is the same as the one-voice prong of the test used to analyze cases under the Import-Export Clause." *Vinmar*, 947 S.W.2d at 555 (citing *Itel Containers Int'l Corp. v. Huddleston*, 507 U.S. 60, 77, 113 S. Ct. 1095, 122 L. Ed. 2d 421 (1993)).

In 1945, Congress removed all Commerce Clause limitations on the authority of the states to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act (15 U.S.C. §§ 1011-1015). *W & S Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 653, 101 S. Ct. 2070, 68 L. Ed. 2d 514 (1981) (citing 59 Stat. 33, 15 U.S.C. § 1011 *et seq.*). That Act provides in relevant part that, "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business" 15 U.S.C.S. § 1012(a). In passing the McCarran-Ferguson Act, it was the intent of Congress to restore state taxing and regulatory authority over the insurance business to the scope it had enjoyed before the U.S. Supreme Court holding in *United States v. S-E Underwriters Ass'n*, 322 U.S. 533, 64 S. Ct. 1162, 88 L. Ed. 1440 (1944), which held that insurance is "commerce" within the meaning of the Commerce Clause. *W&S Life Ins. Co.*, 451 U.S. at 653-54 (citations omitted).

As noted by the Supreme Court in *W & S Life Ins. Co.*, the McCarran-Ferguson Act removed any restriction on a state's power to tax the insurance business. *Id.* at 655. Other courts have also determined that the McCarran-Ferguson Act "left the matter of

regulation and taxation of insurance companies to the states." *Id.* (citing *In re Ins. Tax Cases*, 160 Kan. 300, 313, 161 P.2d 726, 735 (1945)). Accordingly, assessed taxes like that before us are not subject to challenge based upon the Commerce Clause. *W & S Life Ins. Co.*, 451 U.S. at 655. Furthermore, even if the taxes could be challenged under the Commerce Clause, we find, as discussed in our analysis under Appellant's second issue, the tax assessed here was not unconstitutional. Consequently, we overrule Appellant's first issue.

### ISSUE TWO—IMPORT-EXPORT CLAUSE

In its second issue, Appellant argues the trial court erred by failing to recognize that the tax imposed by Appellees also violated the Import-Export Clause.[9] Appellant asserts the tax imposed on the insurance was, in essence, a tax imposed on the cotton product that was insured and intended for export, an action that is prohibited. Appellant asserts that the insurance coverage attached to each individual bale of cotton and "rode" with that bale until it reached its final destination outside the warehouse. Appellant contends a violation of the Import-Export Clause was even more apparent given the fact that marine insurance was a necessary part of the shipping documents required to insure the cotton during its transit to foreign ports.

As noted in footnote 5 above, the Import-Export Clause of the United States Constitution states as follows:

> No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing [its] inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the

---

[9] We note the Commerce Clause grants power to Congress and "touches all state taxation and regulation of interstate and foreign commerce, whereas the Import-Export Clause bans only 'Imposts or Duties on Imports or Exports.'" *Dep't of Revenue v. Ass'n of Washington Stevedoring Cos.*, 435 U.S. 734, 51, 98 S. Ct. 1388, 55 L. Ed. 2d 682 (1978) (citing *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 279, 290-294, 96 S. Ct. 535, 46 L. Ed. 2d 495 (1976)).

Treasury of the United States; and all such Laws shall be subject to the Revision and Controul [sic] of the Congress.

U.S. CONST. art. I, § 10, CL. 2. The leading case interpreting this clause is *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 96 S. Ct. 535, 46 L. Ed. 2d 495 (1976). There, the Supreme Court set forth three policies underlying the Import-Export Clause:

> (1) the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistent with that exclusive power;
>
> (2) import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and
>
> (3) harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the inland States not situated as favorably geographically.

*Diamond Shamrock Ref. & Mktg. Co. v. Nueces Cnty. Appraisal Dist.*, 876 S.W.2d 298, 300 (Tex. 1994) (citing *Michelin Tire Corp.*, 423 U.S. at 285-86).

In *Michelin Tire Corp.*, the Supreme Court determined that a state tax will be upheld under the Import-Export Clause as long as the tax does not usurp the federal government's authority to regulate foreign relations, deprive the federal government of import revenues, or disturb harmony by allowing coastal states to tax goods coming through their ports. *Dep't of Revenue v. Ass'n of Washington Stevedoring Cos.*, 435 U.S. 734, 751, 98 S. Ct. 1388, 55 L. Ed. 2d 682 (1978) (citing *Michelin Tire Corp.*, 423 U.S. 290-294). The same factors set forth in *Complete Auto*, 430 U.S. at 279 and *Japan Line*, 441 U.S. at 451 also apply here in determining whether the Import-Export Clause prohibits taxes like those assessed against Appellant.

Here, the tax assessed against Appellant is a generally applicable tax on premiums charged for surplus lines insurance, imposed under chapter 225 of the Texas Insurance Code.[10]  *See* TEX. INS. CODE ANN. §§ 981.008, 225.004, 225.006(a).  The tax applies equally to all surplus lines insurance policies, regardless of the particular type of insurance.  *Id.* at § 225.004.  Consequently, the tax is applicable whether the insurance covers goods that are exported or domestically consumed.  For this reason, we cannot agree with Appellant that the tax was unconstitutional merely because the insured cotton may have been intended for export.  The same tax would have been imposed on cotton intended for domestic use in Texas.  Because the tax applies equally, the tax cannot create any special tariff that favors goods consumed domestically over those that may be exported and cannot create any special tariff that favors or disfavors exports to certain countries.  Thus, the tax assessed against Appellant does not usurp the federal government's authority to regulate foreign relations and it does not violate the first prong of the *Michelin Tire Corp.* test.  *See Washington Stevedoring*, 435 U.S. at 754.[11]

Likewise, the tax does not violate the second prong of the *Michelin Tire Corp.* test because that prong provides that a state tax may not deprive the federal government of *import* revenues by diverting those revenues to the states.  Here, Appellant has alleged

---

[10] "Surplus lines insurance" is statutorily defined as "insurance coverage that may be placed, in accordance with [chapter 981 of the Texas Insurance Code], with an eligible surplus lines insurer or the insurer's managing underwriter."  TEX. INS. CODE ANN. § 981.002(9) (WEST SUPP. 2019).  Typically, it is an insurance policy that protects against a financial risk that is too thigh for a regular insurance company to take on.  Generally, surplus lines insurance is more expensive than regular insurance because the risks are higher and, unlike regular insurance, surplus lines insurance can be purchased from an insurer not licensed in the insured's state.

[11] Appellant argues the importance of recognizing the difference between the taxes in *Washington Stevedoring* and those imposed here.  The tax in *Washington Stevedoring* did not fall directly on the goods themselves but rather, Appellant contends, on a service distinct from the goods and their value.  *Washington Stevedoring,* 435 U.S. 734.  Appellant says the "key distinction" is that the tax there was applied to a business activity that was connected in some way to foreign trade, while the tax imposed here is on the good itself that is being exported.

only that Appellees improperly taxed cotton intended for export and makes no allegation concerning any activity related to imports. Accordingly, Appellant has not shown that the contested tax deprived the federal government of import revenues.

Further, the tax assessed against Appellant does not disrupt harmony by allowing coastal states to tax goods coming through their ports. This prong is equivalent to the analysis required to determine whether a state tax violates the Commerce Clause. *Washington Stevedoring*, 435 U.S. at 754-55. Thus, we look to the tests set forth in *Complete Auto* and *Japan Line.*

The first condition in *Complete Auto* requires that the activity to be taxed have a "substantial nexus" with the taxing state. *Complete Auto*, 430 U.S. at 279. The record before us contains ample evidence to allow us to find the requirement is satisfied here. First, Appellant is a Texas Corporation, operating from its sole office located in Dallas, Texas. Second, the insurance policies at issue, that were taxed giving rise to this suit, were all negotiated by Appellant from its office in Texas. Third, the policies insured against the risk of damage to cotton stored in warehouses located in Texas. And finally, the premiums were paid to Appellant by the warehouses located in Texas.[12] Furthermore, nothing in the record contradicts a clear nexus between the activities taxed and the State of Texas.

The second requirement set forth in *Complete Auto* mandates that the tax be fairly apportioned. *Id.* at 279. A court will "strike down the application of an apportionment

---

[12] We note Appellant's clarification that the premiums paid by the Texas warehouses were paid in their capacity as agents for the owner and holder of the baled cotton—who may or may not have been located in Texas. According to Appellant, the cotton warehouse merely collected the premiums as the cotton exited the warehouse because all charges, storage, and insurance had to be paid before the cotton was released. We do not find this clarification alters the outcome of our decision herein.

formula if the taxpayer can prove 'by clear and cogent evidence' that the income attributed to the State is in fact out of all appropriate proportions to the business transacted . . . in that State or has 'led to a grossly distorted result.'" *Container Corp. of Am.*, 463 U.S. at 170 (citations omitted). Here, Appellant has not met that burden. The record indicates the tax at issue was collected from a Texas corporation, i.e., Appellant, based on a business conducted entirely in Texas, i.e., the brokering of insurance policies, negotiated with cotton warehouses in Texas, and receiving premiums for insurance on cotton located in Texas. As such, a rational relationship exists between the tax and the insurance policies sufficient to meet the second prong. Furthermore, we see no evidence in the record showing the taxes assessed were "out of all appropriate proportion" to the activities being taxed in Texas.[13] *Id.*

The third prong of the test set forth in *Complete Auto* requires that the tax not discriminate against interstate or foreign commerce. *Complete Auto,* 430 U.S. at 279. A tax violates the third prong of the *Complete Auto* test only if it treats interstate and intrastate commerce differently. *Commonwealth Edison Co. v. Mont.*, 453 U.S. 609, 618-19, 101 S. Ct. 2946, 69 L. Ed. 2d 884 (1981). The tax assessed here taxed surplus lines insurance policies equally, making no distinction between the policies covering cotton that would be exported to foreign ports and the cotton that would be consumed domestically.

---

[13] Furthermore, the assessed tax is not internally inconsistent. A tax is inconsistent and violative of the Commerce Clause when it is structured in such a way that if every state were to impose an identical tax, multiple taxation would occur. *ETC Mktg. v. Harris Cnty. Appraisal Dist.*, 528 S.W.3d 70, 86 (Tex. 2017). *See Goldberg v. Sweet*, 488 U.S. 252, 260-61, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989); *Barringer v. Griffes*, 1 F.3d 1331, 1336 (2d Cir. 1993). Because the assessed tax relates to property and property can only be in one place at the time of the tax assessment, the tax is internally consistent and not violative of the Commerce Clause. *ETC Mktg.*, 528 S.W.3d at 86 (citation omitted).

Therefore, there is no indication the tax discriminated against interstate or foreign commerce.

The final requirement of the *Complete Auto* tests mandates that the tax be fairly related to services provided by the taxing state. *Complete Auto,* 430 U.S. at 279. The purpose of this requirement is "to ensure that a State's tax burden is not placed upon persons who do not benefit from services provided by the State." *Goldberg v. Sweet*, 488 U.S. 252, 266-67, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989) (citation omitted). Appellant is a Texas Corporation that generated all of the insurance premiums at issue through its business of brokering insurance policies to cover cotton stored in Texas warehouses. The record does not support a finding that the tax is not fairly related to services provided by Texas. Appellant argues in its reply brief that the services listed by Appellees describe general services provided by the State and none are specific to the bales of cotton that are in the stream of export. But, the Supreme Court has held that "a taxpayer's receipt of police and fire protection, the use of public roads and mass transit, and the other advantages of civilized society satisf[y] the requirement that the tax be fairly related to benefits provided by the State to the taxpayer." *Id.* at 267 (citation omitted). Furthermore, the rights, duties, and obligations of the insurance contract itself are protected by and enforceable through the judicial system of this state. And, as the Supreme Court has recognized, while it may be true that "many others in the State benefit from the same services," that fact does not change the fact that the stream of commerce through which the insured bales of cotton passed, likewise benefited from those services. *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 32, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988). As such, the tax paid by Appellant is related to the advantages provided by the State which aids Appellant's business. *Id.* *See also ETC Mktg., Ltd. v. Harris Cty. Appraisal Dist.*, 476

S.W.3d 501, 513 (Tex. App.—Houston [1st Dist.] 2015), *aff'd ETC Mktg. v. Harris Cnty. Appraisal Dist.*, 528 S.W.3d 70 (Tex. 2017).

We turn now to consideration of the two requirements set forth in *Japan Line*, 441 U.S. at 451. The first factor inquires whether the tax creates a "substantial risk of international multiple taxation." *Vinmar*, 947 S.W.2d at 555. Here, Appellant conceded it did not pay tax to any other state or country. Therefore, as applied, the tax in question did not create a substantial risk of multiple taxation. Furthermore, Appellant's designated representative testified that based on his extensive experience in the insurance industry, he could not think of a basis on which another state would be able to impose any insurance premium tax on Appellant. Appellant argues only that because there is no mechanism to assure that no international multiple taxation will occur, the tax in question "could, and may, also be taxed somewhere else." This argument is based wholly on speculation and provides no basis on which to determine that the tax in question creates the type of substantial risk contemplated. As such, the record does not support a finding that the tax assessed here created a substantial risk of multiple international taxation.

The second factor set forth in *Japan Line* requires inquiry as to whether the challenged tax prevents the federal government from speaking "with one voice when regulating commercial relations with foreign governments." *Vinmar*, 947 S.W.2d at 558. This factor is the same as the first prong of the *Michelin Tire Corp.* test. *Itel Containers Int'l Corp.*, 507 U.S. at 77. Because we have already found the tax assessed here did not violate the first prong of the *Michelin Tire Corp.* test, we also find it does not run afoul of the second factor of *Japan Line*.

13

The tax assessed against Appellant complies with all six applicable factors. We cannot, therefore, agree with Appellant that the trial court erred in concluding the tax did not violate the Import-Export Clause of the United States Constitution or that it erred in granting Appellees' motion for summary judgment or denying Appellant's. Therefore, we overrule Appellant's second issue.[14]

### ISSUE THREE—28 TEX. ADMIN. CODE ANN. § 5.5002(2)(B)

In its final issue, Appellant contends the trial court erred when it found that the insurance policies at issue were surplus lines insurance rather than marine cotton insurance. It argues Appellees improperly assessed the taxes in question because they mischaracterized the type of insurance being provided.

Appellant contends the bales of cotton being stored were insured under ocean marine insurance policies (not subject to taxation)[15] rather than surplus lines insurance policies (subject to taxation). Appellees respond by contending that because the insurance policies at issue were underwritten by insurers not licensed to do business in Texas, the policies were surplus lines insurance.

Texas law imposes a variety of taxes on insurance premiums. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 84 (Tex. 2006) (citing TEX. INS. CODE ANN. §§ 221-226). Those taxes are typically imposed on and paid by insurers licensed to do business in

---

[14] Appellant's reliance on cases interpreting the Export Clause (U.S. CONST. ART. I, § 9, CL. 5, providing "[n]o Tax or Duty shall be laid on Articles exported from any State") to support its contentions concerning the Import-Export Clause is misplaced. The Export Clause applies only to the federal government, includes different language than the Import-Export Clause, and is governed by a stricter test than that applied to the Import-Export Clause. As such, cases relied on by Appellant, including *Thames & Mersey Marine Ins. Co. v. United States*, 237 U.S. 19, 35 S. Ct. 496, 59 L. Ed. 821 (1915) are inapposite.

[15] *See* TEX. INS. CODE ANN. § 225.004(g) (providing, "[p]remiums on risks or exposures under ocean marine insurance coverage of stored or in-transit baled cotton for export are not subject to the tax imposed by this chapter").

Texas. *Id.* (citations omitted). However, premium taxes are assessed even if there is no licensed insurer, as with surplus lines policies, to prevent giving policies by unlicensed insurers an unfair advantage. *Id*. (citations omitted). As applicable to the dispute at hand, the Insurance Code imposes a 4.85 percent tax on premiums paid surplus lines insurance. *Id.* (citations omitted). *See* TEX. INS. CODE ANN. § 225.004(a) (providing "[a] tax is imposed on gross premiums for surplus lines insurance. The rate of the tax is 4.85 percent of the gross premiums.").

To support its contention that the trial court erred in its determination that the surplus lines tax is applicable here, Appellant contends its premiums are not subject to surplus lines tax under section 225.002 of the Insurance Code. That section presently provides, "[t]his chapter applies to a surplus lines agent who collects gross premiums for surplus lines insurance *for any risk in which this state is the home state of the insured*." TEX. INS. CODE ANN. § 225.002 (West 2011) (emphasis added). The 2011 amendment to the provision added "for any risk in which this state is the home state of the insured" and applies only to insurance policies delivered, issued for delivery, or renewed on or after July 21, 2011. In the case before us, all but two of the policies at issue were effective before July 21, 2011, and, therefore, for the majority of the policies at issue, there is no "home state" inquiry. In each case, the surplus lines insurance tax is due as long as the insurance was written on "property or risks located. . . in this state." TEX. INS. CODE ANN. § 225.004(d) (West 2009). Furthermore, even if the current provision applied to all of the policies at issue, the record shows Texas was the home state of the insured because each policy was written, procured, or received by Appellant from its Dallas, Texas office and insured cotton stored in warehouses located in Texas. Nothing in the record shows otherwise.

15

Appellant points to section 5.5002(2)(B) of the Texas Administrative Code, entitled *Texas Definition of Inland Marine Insurance*, as support for its argument that the trial court erred in its characterization of the insurance policies at issue. 28 TEX. ADMIN. CODE ANN. § 5.5002(2)(B). That provision provides, "Export property is deemed to acquire its character as such when designated as such or while being prepared for export and retains that character unless diverted for domestic trade, and when so diverted, the provisions of these sections respecting domestic shipment shall apply; provided, however, these provisions do not apply to long established methods of insuring certain commodities, e.g., cotton." *Id.* Appellant argues that because the definition of "Export Property" as set forth in section 5.5002(2)(B) specifically includes marine cotton insurance, the insurance policies at issue should not have been characterized as surplus lines insurance subject to the premium tax at issue. Conversely, Appellees argue that section 5.5002(2)(B) is irrelevant to the issue of taxation because that provision merely defines types of insurance that are not subject to rate regulation by the State and that section does not speak to the type of insurance policies at issue here or the propriety of the tax assessed. We agree. Nothing in section 5.5002(2)(B) establishes that the insurance policies at issue were not surplus lines insurance policies subject to the premium tax. Appellant's third issue is overruled.

CONCLUSION

Having resolved each of Appellant's issues against it, we affirm the orders of the trial court.

Patrick A. Pirtle
Justice

16